116 So.2d 906

Charles Clarence HAMILTON

v.

STATE of Alabama.

6 Div. 164.

Supreme Court of Alabama.

Sept. 17, 1959.

Rehearing Denied Jan. 21, 1960.

**186**

Orzell Billingsley, Jr., Arthur D. Shores, Peter A. Hall and Oscar W. Adams, Jr., Birmingham, for appellant.

**LIVINGSTON, Chief Justice.**

The appellant, Charles Clarence Hamilton, was indicted by the Grand Jury of the Tenth Judicial Circuit of Alabama for burglary in the first degree under the provisions of Sec. 85 of Title 14, Code of Alabama 1940, which reads as follows:

"§ 85. Burglary in the first degree. —Any person who, in the nighttime, with intent to steal or to commit a felony, breaks into and enters any inhabited dwelling house, or any other house or building, which is occupied by any person lodged therein is guilty of burglary in the first degree, and shall on conviction be punished at the discretion of the jury, by death or by imprisonment in the penitentiary for not less than ten years."

The indictment contained two counts. Count 1 charged the defendant with breaking and entering into the inhabited dwelling house of Jacob C. Milko in the nighttime with intent to steal, etc. Count 2 of the indictment charged the defendant with breaking and entering into the inhabited dwelling house of Jacob C. Milko in the nighttime with intent to ravish, etc.

John Patterson, Atty. Gen., and Jas. W. Webb, Asst. Atty. Gen., for the State.

The jury returned a verdict of guilty as charged in Count 2 of the indictment and fixed the punishment at death. Judgment was rendered accordingly. Appellant's motion for a new trial was overruled. This appeal comes to this court under the Automatic Appeal Statute, Title 15, Sec. 382 (1) et seq., Code of Alabama 1940, Cumulative Pocket Part. The Honorable Clell I. Mayfield was appointed by the trial court to, and did, defend the appellant on

his trial in the court below. On appeal, it appears that the appellant is represented by four other and different attorneys at law.

The evidence for the state tended to prove the following:

On the night of October 13, 1956, Mr. and Mrs. Jacob C. Milko were occupying a dwelling house designated as 1501 Avenue G, Ensley, Jefferson County, Alabama. Living with Mr. and Mrs. Milko were the grandparents of Mrs. Milko. The grandparents were Jake Giangrosso and Mary Giangrosso, each of whom occupied separate rooms. The grandmother, Mrs. Mary Giangrosso, occupied a room adjoining that of Mr. and Mrs. Milko, connected by a door between the two rooms. Mrs. Giangrosso's room also had a door leading out to the front porch of the dwelling house. Jake Giangrosso occupied a room in another part of the dwelling.

During the early morning hours, sometime between 2:00 and 3:00 o'clock of October 13, 1956, Mr. and Mrs. Milko heard the grandmother in the adjoining room making a loud noise or groaning. Mr. Milko got out of bed and opened the door leading into Mrs. Giangrosso's room, where he found the defendant, Charles Clarence Hamilton, standing near the door between the two rooms. His shoes were off, one being under the bed of Mrs. Giangrosso, and the other near the front door. His pants were off and were on the bed of Mrs. Giangrosso, and he was in his underwear, and as expressed by Mr. Milko, "His downstairs was hanging out, and he didn't have no shoes on and he had an old corduroy shirt on, and he was staring me straight in the face. That was all he had on." The front door of Mrs. Giangrosso's bedroom leading to the porch was open. Mr. Milko went back in his bedroom and procured a revolver, returned to Mrs. Giangrosso's bedroom where the appellant was still standing, turned on the light, held his gun on appellant, and told his wife, Mrs. Milko, to call the law. Mrs. Giangrosso was standing between the bed and the door leading into Mr. Milko's room. Upon turning the lights on, the front door was seen to be wide open. Mr. Milko held the appellant until two police officers arrived, which was only a few minutes. Mr. Milko further testified that he was employed by the Tennessee Coal, Iron and Land Company in the Transportation Division, and that on the day in question, his working hours were from 3:00 p. m. until 11:00 p. m., and that in his best judgment he did not get home on the night of October 12, 1956 until around a quarter to 11:00 o'clock; that when he got home his wife had retired and his wife's grandmother and grandfather had also retired; that he unlocked the front door leading into Mrs. Giangrosso's bedroom and went through her bedroom into his own bedroom, and Mrs. Giangrosso was in bed at that time, as was also his wife.

Testimony further shows that Mrs. Giangrosso is of Italian birth, speaks English with difficulty, is partially blind, more or less feeble, and suffers with a heart condition. Testimony further shows that the front door leading from Mrs. Giangrosso's bedroom to the outside was locked prior to the defendant's entry, and after apprehension of the defendant marks of a forcible entry were found on the door leading from the porch into Mrs. Giangrosso's bedroom.

Mrs. Milko testified that she had seen the defendant at previous times walking in front of the Milko dwelling and at those times he made certain obscene motions with his hands.

The appellant testified, in substance, that Mrs. Giangrosso came out of her house on the night in question and began to yell at him, and grabbed him by the arm and forced him to accompany her into her room; that she made him sit down by her bed for about an hour and take off his shoes; that her son-in-law came in and pulled his pistol on him and held him for the police. The appellant further testified that he was indicted November 9, 1956 by the Grand Jury for nighttime "burglary with intent to steal."

(This testimony will be referred to later.) Appellant further testified that there was no telephone in the (Milko) house, and that Milko went outside the house to get the police.

In rebuttal, both Mr. and Mrs. Milko reiterated their testimony to the effect that there was a telephone in the Milko home and that Mrs. Milko called the officers while Mr. Milko held the appellant. The evidence further tends to show that the Milko home is located within two or three blocks of the police station.

Appellant insists that in capital cases where defendant is unable to employ counsel the court must appoint effective counsel for him, and failure to do so denied defendant a fair trial and violates the equal protection and due process clause of the Fourteenth Amendment to the Constitution of the United States and the Constitution §§ 1, 6 and laws of the State of Alabama; and that the right of accused to assistance of counsel includes the right to assistance from time of arraignment until beginning and end of the trial.

We have no quarrel with the above insistence of counsel for appellant, but the principle is without application to the record before us. The record discloses that Hon. Clell I. Mayfield was appointed by the court to defend, and did defend, the appellant on his trial in the court below. But counsel who now represent appellant on this appeal insist that Mr. Mayfield was not appointed until after appellant was arraigned and had entered a plea of not guilty. Present counsel attached to their brief a certified copy of the bench notes of the trial judge in this case. The argument is that the bench notes show that appellant was arraigned on March 1, 1957, and also show that Mr. Mayfield was appointed counsel for appellant on March 4, 1957. The record contains the following minute entry:

"ARRAIGNMENT

| "THE STATE VS. CHARLES CLARENCE HAMILTON | Indictment for Burglary with Intent to Steal, Burglary with Intent to Ravish |
|---|---|

Honorable Wallace Gibson, Judge Presiding

"This the 1st day of March, 1957, came Emmett Perry, Solicitor, who prosecutes for the State of Alabama, and also came the defendant in his own proper person and by attorney, and the said defendant being now in open Court, and being duly arraigned upon the indictment in this cause, for his plea thereto says that he is not guilty."

———◇———

Also, the judgment entry of the 23rd day of April, 1957, the date on which appellant was tried, is to the same effect as the minute entry upon arraignment.

 A minute entry constitutes the final record of a judgment. It cannot, in a court of record, be impeached by the judge's bench notes or memoranda, which operate only as a direction to the clerk as to what judgment and orders shall be entered on the court's records. Ex parte Haynes (Haynes v. State), 39 Ala.App. 349, 98 So.2d 670; Lockhart v. State, 34 Ala.App. 297, 39 So.2d 40.

In Du Pree v. Hart, 242 Ala. 690, 8 So. 2d 183, 186, it is stated:

"It is said in Briggs v. Tennessee C., I & Ry. Co., 175 Ala. 130, at page 142, 57 So. 882, that there is no law requiring a judge to make bench notes, and because such notes do not include rulings which appear in the judgment entry is not good ground to hold that such rulings were not made. Bench

notes were not necessary to sustain a judgment entered on the minutes during the term of court, against attack made on the judgment; and the judgment entry prevails over the bench notes when they conflict. Lockwood v. Thompson & Buchmann, 198 Ala. 295 (3), 301, 73 So. 504. But they were always necessary to justify an order nunc pro tunc. During the term prior to the Code of 1923 the judge had control of the entry and could add to, strike out or alter its records. Wilder v. Bush, 201 Ala. 21, 75 So. 143. Under section 6670, Code of 1923, the judge had such power for thirty days after the judgment was rendered. Code of 1940, Title 13, section 119."

■ Counsel for appellant next insist that to constitute burglary in the first degree "there must be a breaking and entering of the dwelling house of another with an intent to commit a felony therein." This argument presents purely a question of fact in that the evidence was amply sufficient to prove a breaking and entering of the dwelling of another in the nighttime with the intent to commit a felony therein, and is without merit.

■ The appellant testified in his own behalf. After appellant had been cross-examined by the solicitor for the state, he, as distinguished from re-direct examination by his attorney, requested the court to allow him to testify further. The trial court granted the request. The appellant then proceeded to testify to the effect that he had been indicted twice for the same offense, and made certain other irrelevant and immaterial statements. The trial court interrupted the appellant and explained to him that he was entitled to testify only to matters that were relevant and material to the matters involved in the indictment upon which he was then on trial. We have carefully examined the proffered testimony, which is our duty under the Automatic Appeal Statute, and are clear to the conclusion that no error intervened in reference to the proffered testimony, nor did error intervene as to the manner or method in which the trial court conducted this part of the trial, nor as to the colloquies which ensued between the trial court and appellant with reference thereto.

■ Mention is made in brief of other colloquies between the court and the defendant during the trial in the court below. Suffice it to say, that no objections were made nor exceptions reserved to any remarks made by the court.

It was stated in Washington v. State, 259 Ala. 104, 65 So.2d 704, 707:

"* * * Only review of rulings on trial with respect to matters of evidence are within the scope of the statute obviating the necessity of interposing seasonable objection and exception. Code 1940, Title 15, § 382(10), 1951 Cum.Pocket Part, Vol. 4, p. 103; Broadway v. State, 257 Ala. 414, 60 So.2d 701(4); Townsell v. State, 255 Ala. 495(4), 52 So.2d 186; James v. State, 246 Ala. 617, 21 So.2d 847."

See, also, Jackson v. State, 260 Ala. 641, 71 So.2d 825.

■ At the beginning of the trial of appellant on April 23, 1957, defendant stated to the court that the lawyer appointed to defend him by the court was not his lawyer, and the court-appointed attorney asked permission to withdraw from the case. On this occasion, the court asked the appellant if he had other counsel, and he replied that he did not. Thereupon, the court explained the purposes and duty of the court to appoint capable counsel to represent those defendants charged with capital offenses who were unable to employ counsel, and declined to allow the court-appointed counsel to withdraw.

Sec. 318, Title 15, Code of 1940, as amended by Act No. 176, Acts of Alabama 1947, p. 61, provides that:

"When any person indicted for a capital offense is without counsel and

the trial judge, after due investigation is satisfied that the defendant is unable to employ counsel the court must appoint counsel for him not exceeding two, who must be allowed access to him, if confined, at all reasonable hours,
* * *"

■ In the first place, attorneys at law are officers of the court. An attorney assigned as counsel for an indigent prisoner ought not to ask to be excused for any light cause. Code of Ethics of Alabama State Bar Association. In the second place, the appellant did not indicate to the court that he wished the court-appointed attorney to withdraw from his defense, nor that he was unfaithful or incompetent. He merely stated, without more, that the court-appointed attorney was not his lawyer. The record before us does not indicate to the slightest degree that the appellant was seeking to discharge his attorney in order to exercise his right to conduct his own defense. At most, the statement made by the appellant indicated only that he did not approve of the court-appointed attorney. But present counsel insist that under these circumstances representation could be nothing more than pro forma. But in their brief, with commendable candor, they stated: "We do not mean to reflect upon the capabilities of counsel representing defendant."

Even conceding that appellant requested the dismissal of his court-appointed attorney, to yield to such a request, where the defendant has not made it clear that he really wishes to conduct the defense in propria persona gives far too great a chance to delay trials and otherwise embarrass effective prosecution of crime. United States v. Gutterman, 2 Cir., 147 F.2d 540, 157 A.L.R. 1221; United States v. Mitchell, 2d Cir., 137 F.2d 1006; Id., 2d Cir., 138 F.2d 831.

We have carefully examined the record with reference to the conduct of the trial by the court-appointed attorney, and are of the opinion that he did his full duty under the circumstances. And as was stated in Arrington v. State, 253 Ala. 178, 43 So.2d 644, 647:

"While an attorney must see that the rights of his client are protected, he cannot be subjected to censure because he does not manufacture evidence."

There is no merit in this contention of the appellant.

■■ The trial court refused six written charges duly requested by the appellant. Charge 1 relates only to Count 1 of the indictment. The defendant was convicted under Count 2 of the indictment, therefore, reversible error could not intervene because the verdict of the jury was, in effect, an acquittal under Count 1 of the indictment. Charge 2 is in the following language:

"2. The court further charges that intent to ravish must be accompanied by violence or force towards the person before it can be distinguished as such, and if the jury does not find from the evidence such dements (sic) of force or violence, they must acquit the defendant under the 2nd Count in the indictment."

■ Charge No. 2 is an incorrect statement of the law. The breaking and entering the house with intent to ravish is the gravamen of the offense charged in Count 2 of the indictment, and it is not required that the intended act be consummated. 1 Whart., Crim.Law, 8th Ed., Sec. 818; Wicks v. State, 44 Ala. 398; Wolf v. State, 49 Ala. 359; Barber v. State, 78 Ala. 19; Holland v. State, 247 Ala. 53, 22 So.2d 519. The charge is also inaptly drawn and is confusing in its tendencies. For like reasons, Charges 5 and 6 were properly refused.

Charge No. 3 was substantially covered in the oral charge and its refusal was without error.

Refused Charge 4 is misleading and incorrect under the evidence presented in this

case. There is no evidence that the dwelling house entered and occupied by Jacob C. Milko and family was effectively divided into portions, rather, the evidence is uncontroverted that the house was occupied by Mr. Milko and his family as a unit.

We have examined the record with care and find no error to reverse.

Affirmed.

LAWSON, SIMPSON, STAKELY, GOODWYN and MERRILL, JJ., concur.