Appellant was indicted, convicted, and sentenced to fifteen years imprisonment for first degree burglary, in that he broke and entered an inhabited dwelling house in the night time with intent to ravish.
The State's evidence showed that on the morning of November 1, 1979, the prosecutrix awoke and saw someone hovering over her. She could not see the person's face, but she stated that she screamed and the intruder then pulled the bedcovers over her head. She tried to resist, but the person held her down and told her to shut up or he would kill her. He then fondled her breasts and genitals, unzipped his pants, and pressed his body against her. She could tell that he did not have a shirt on at that time. She pretended to be unconscious and the assailant then dragged her into the living room, dropped her by the door and left. The prosecutrix testified that the screen on her bedroom window was intact when she retired for the night, but that after her assailant left, the screen was broken.
Mrs. Burnita Fuller, a neighbor of the victim stated that about 2:30 A.M. on November 1, 1979, she was awakened by screams and a thumping noise coming from the victim's apartment. Mrs. Fuller's husband called the police and they arrived within three minutes. After the police got there, Mrs. Fuller heard the sound of a door slamming and someone running.
Officer W.E. Toole of the Mobile Police Department testified that on November 1, 1979, he answered a call for help at the victim's address. As Toole approached the premises he heard a door slam and saw a black male with no shirt on and his pants down. The man tried to pull up his pants and began running from Toole. Officer Toole chased the subject through several *Page 432 
yards and finally apprehended him. At trial, Toole identified the appellant as the subject he caught.
At the conclusion of the State's case, appellant moved to exclude the evidence on the ground that a prima facie case of first degree burglary had not been shown. The motion was overruled and appellant called one witness, Mrs. Burnita Fuller. Mrs. Fuller's testimony was similar in substance to her original testimony.
 I
Appellant's motion to exclude at the close of the State's case presents the question of the sufficiency of the evidence to this court. In Gaskin v. State, 53 Ala. App. 64,297 So.2d 388 (1974), we outlined the elements of the offense of first degree burglary as follows:
 "(1) breaking and entering, (2) in the nighttime, (3) of an inhabited dwelling house or any other house or building occupied by any person lodged therein, with intent to steal or commit a felony."
All the foregoing elements were properly proved in the case before us. Contrary to appellant's assertion, the broken window screen clearly provided proof of a "breaking and entering." Compare State v. McCall, 4 Ala. 643 (1843). In addition, Miss Davis' testimony about the intruder's conduct, once inside the bedroom, is sufficient to prove the "intent" element. SeeHamilton v. State, 270 Ala. 184, 116 So.2d 906 (1959), cert. den., 365 U.S. 852, 80 S.Ct. 1638, 4 L.Ed.2d 1737 (1960).
 II
Appellant contends that the trial court erred when it instructed the jury not to draw "any inference" from the defendant's failure to testify.
From the record:
 "Now, I would not ordinarily mention it, except that counsel for the defendant has mentioned it both in his opening and closing statements, and I want to make sure that you understand, and so I tell you and I will appeal to both counsel when I finish making this statement to tell me if I have stated it correctly. That defendant has no burden to take the stand, number one. He has a constitutional right to stand silent, number two. Number three, you cannot draw any inference from his failure to take the stand. Now, is there anybody in this box that can't follow my instructions on that point? If so, stand up right now and I will mistrial this whole case. That is a fact and I charge you that you cannot draw any inference from his not taking the stand. And I appeal to both counsel and ask if I have stated it fully and fairly.
"MR. HANLEY: That's the way I understand it, Judge.
"MR. STEIN: [Defense counsel] Yes, sir, Judge.
"THE COURT: Thank you very much."
It is clear from the foregoing portion of the transcript that the trial judge felt it appropriate to explain the law regarding defendant's failure to testify since defense counsel had himself discussed it in argument. It is also evident that, taken in context, the court's comments were a commendable effort to protect the defendant from any unfavorable inferences the jury might have drawn.
Appellant cites Smith v. State, Ala.Cr.App., 370 So.2d 312, for the proposition that, in the absence of a requested charge by the defendant on the subject, comment by the trial judge on the defendant's failure to testify should clearly set out the fact that no inference adverse to the defendant — rather than simply "no inference" — can be drawn from the defendant's failure to take the stand. We find that Smith v. State, supra, does not mandate reversal here since appellant not only took no exception to the court's comments, but also specifically approved the statement. In the absence of an exception to the court's oral charge, there is no basis for appellate review.Crenshaw v. State, Ala.Cr.App., 374 So.2d 448. *Page 433 
 III
Appellant also complains of the following statement made by the trial court in its oral charge to the jury:
 "You may infer from the facts of this case or from the circumstances of this case the necessary intent element."
Appellant argues that the foregoing was an impermissible comment upon the effect of the evidence in violation of §12-16-11, Code of Alabama, 1975. This contention is insupportable in view of the fact that appellant took no exception to the charge. Crenshaw v. State, supra. Moreover, it is a well settled proposition of law that, upon review of the trial court's instructions to the jury, the charge must be taken as a whole and not out of context. Van Antwerp v. State, Ala.Cr.App., 358 So.2d 782. The record reveals that immediately after the statement complained of, the judge stated the following:
 "If from the facts you cannot infer an intention to commit a felony, you cannot convict the defendant." [Emphasis added.]
When this portion of the charge is taken together with the court's earlier statement, it is apparent that the jury was instructed that they could convict only if they found the necessary intent element.
 IV
Appellant makes the further argument that the court erred in its refusal of his written requested charges numbered 10 and 11. The requested charges, however, were fully and substantially covered in the court's oral charge and it was not error to refuse them. Barnes v. State, Ala.Cr.App.,361 So.2d 390.
 V
Appellant next asserts that certain photographs of the victim's yard and apartment were not admitted into evidence, yet were taken by the jury to the jury room. First of all, we are not convinced from the record either that the exhibits were not admitted, or that they were, in fact, taken to the jury room. However, assuming both of appellant's assertions to be true, we find no error. It is the responsibility of the defense, along with the prosecution, the court reporter, the acting clerk, and the bailiff, to bring to the court's attention any question regarding what physical evidence shall go to the jury room. "[W]hen the one complaining is no less responsible therefor than others, his complaint is not ordinarily well taken." Merriweather v. State, Ala.Cr.App.,364 So.2d 374.
 VI
Finally, appellant contends that the trial court erred by considering impermissible and extraneous matters in imposing sentence on him. At the sentencing hearing the following occurred:
 "THE COURT: You are asking the Court to give him probation in this case, in the sentencing process?
"MR. STEIN: [Defense counsel] Yes, sir, Judge, I am.
"THE COURT: Mr. Hanley?
"MR. HANLEY: [Assistant District Attorney] Yes, sir.
 "THE COURT: I'd like to hear from your side. You're the trial lawyer representing your state, and you have heard the evidence that went before the jury and the factual basis in this charge.
 "MR. HANLEY: Yes, sir, Judge. Mr. Lowman was found guilty of committing one of the most vicious, premeditated assaults that I have ever heard since I've been prosecuting. I won't get into the facts, I'm not going to insult your intelligence —
"THE COURT: The jury has determined the facts.
 "MR. HANLEY: That's right, and you heard them, Judge, and I think that should be taken into consideration. I would also like for you to consider that the man that stands here today, saying that he is innocent, he had plenty of time to go ahead and confess his guilt and throw himself upon the mercy of the Court, but even to this day he will not admit his guilt. *Page 434 
 "Secondly, Judge, he is also charged with assault with intent to ravish in this case, which will be prosecuted definitely. Judge, Mr. Stein asks you for mercy right now, but Mr. Lowman showed [the victim] absolutely no mercy. And I would ask for a sentence commensurate with the wickedness and severity of the crime.
 "THE COURT: Have you examined the offense report in this case?
"MR. HANLEY: Yes, sir, Judge, I looked at it.
"THE COURT: Presentence report?
"MR. HANLEY: Yes, sir, I examined it.
THE COURT: Do you have any comment to make on that?
 "MR. HANLEY: Judge, he was arrested several times. We don't know if he has committed this crime before and has not been caught; I will tell you as a member of the Bar that there were several burglary ones, rapes in this area, the same fact situation — Somebody broke into a window, threw a blanket over somebody's head and proceeded to rape them in this particular area. As soon as Mr. Lowman was committed to jail the burglaries stopped. I don't know —
 "THE COURT: You wouldn't purport to say that would be a preponderant way of showing that he has committed other crimes?
 "MR. HANLEY: Judge, I can only tell you what the facts are as Cliff Lockett tells me and as the police department records show. Many, many rapes and many, many burglary ones at nighttime go unsolved because they are committed —
 "THE COURT: It is a matter of great public concern, I will take that statement to establish that fact; and it is a matter of great public concern.
 "MR. HANLEY: I would submit to you, Judge, that there is no worse crime that a man can commit than breaking into a single woman's house at night and attempting to rape her.
 "THE COURT: Does the State of Alabama oppose probation?
 "MR. HANLEY: Yes, sir, vigorously." [Emphasis supplied.]
From the quoted excerpt, it is obvious that the trial court was not persuaded by the State's argument that appellant had committed other crimes. The court, in fact, stated that it would consider the prosecutor's argument only to establish the fact that burglary and rape are "a matter of great public concern."
Therefore, we find that no error occurred during the sentencing process. The propriety of a sentence within statutory limits is not reviewable on appeal. Butler v. State, Ala.Cr.App., 344 So.2d 203.
We have searched the record for error prejudicial to appellant and have found none. The judgment of conviction by the Mobile Circuit Court is therefore affirmed.
AFFIRMED.
All the Judges concur.