210 So.2d 704

**Linwood MARTIN**

**v.**

**STATE.**

**6 Div. 28.**

Court of Appeals of Alabama.

May 7, 1968.

Harry Cole, Montgomery, for appellant.

MacDonald Gallion, Atty. Gen., and Paul T. Gish, Jr., Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

The appellant, Linwood Martin, was convicted of the offense of burglary in the first degree in violation of Sec. 85, Title 14, Code of Alabama, 1940. Punishment was fixed at ten years in the penitentiary.

Appellant was represented by court appointed counsel at the trial. On remand of the cause by us for further proceedings under Act. No. 526, p. 1136 General Acts of Alabama 1963, (Title 15, Section 318 (1) et seq., unofficial Code of Alabama Recompiled 1958.) a transcript of the evidence was furnished, with an entry reciting appointment of a named attorney to represent the defendant on appeal. No brief was filed for appellant and we received a statement from the named attorney that he had not been appointed and requesting that this court appoint another attorney for appellant on appeal.

We appointed Honorable Harry Cole, who has furnished us with an excellent brief.

The indictment charged defendant with breaking and entering into the inhabited dwelling house of Ruth Hicks in the nighttime with intent to ravish, etc.

For the state, Ruth Hicks testified she lived at 4224 Forty-second Street North, in Birmingham, Alabama, with her husband and four children. On the night of November 22, 1963, a girl named Barbara Dixon was spending the night at her house; that her husband left for work at about eleven o'clock p. m. When he left she was lying on the sofa; "between sleeping and waking." The children were in bed. After her husband left Barbara Dixon got ready for bed. The house she lives in is a duplex. Linwood Martin lived on the other side of it with a woman named Ruby Mattox.

Ruth Hicks further testified that after her husband left she went to sleep, still on the sofa, and woke up between 12:00 and 1:00 o'clock. She got up to go to bed and had started in the bedroom when she saw Linwood Martin jump out her bedroom window. Barbara Dixon ran and grabbed her and was hollering. Lights were on in the kitchen and front room. The door leading from the kitchen into the bedroom was partially open. She walked to the window and saw defendant standing on the ground next to her house; then he came around to the front door and asked her to let him in but she refused. While he was standing on the porch talking to her Ruby Mattox came out on the porch and took Martin into her side of the duplex. Witness then went across the street and telephoned the police.

Barbara Dixon testified she was fourteen years old. She lived about two blocks from Ruth Hicks and was spending the night with her. She had stayed there the three preceding nights. She slept in Ruth's bedroom and Ruth's four children slept in the same bedroom. The apartment was described as a living room in the front which opened out to the front, a bedroom immediately behind the living room with

one window opening to the outside, a door opening into the living room and another opening into the kitchen adjoining the bedroom.

Barbara testified she knew Linwood Martin; that when she went to bed about 11:00 the window in the bedroom was closed; that she went to sleep and was awakened by someone pulling on her panties. She saw Linwood Martin and started hollering and crying. He said he wanted her to turn around toward the window. He had a knife at her neck and told her if she didn't be quiet he was going to "jook" her with the knife. When Ruth came into the room Linwood jumped out the open window and witness grabbed Ruth Hicks. The defendant left a brown shoe which laces up the front.

On cross examination Barbara testified she had seen Martin in front of his house as she was coming to Ruth Hick's house. They spoke to each other and she had not had any other conversation with him that day. She did not hear Martin when he came in and did not know how he got in the house. He left by an open window and she did not know who opened the window or whether it was open when he came in. The window was closed when she went to sleep and was open when she awoke. There were three children in the room at the time Linwood was there. She didn't know the ages of the children but neither of them was as old as she was. In closing the back door Ruth Hicks normally would take a butcher knife and stick it in the crack in the door to hold it.

Ruby Mattox testified that when she went to the porch and brought Linwood Martin into her apartment he sat down on the couch. He had a knife in his back pocket with the blade sticking up. He was wearing khaki pants which were torn down the front. The last time she had seen him before that the pants were not torn.

At this point it was stipulated that if Elbert A. Dodd, a Birmingham police officer, were present he would testify that he arrested Martin on the night of November 22nd at 12:45 A.M. in the duplex house in which Ruth Hicks lived. His trousers were torn down the side. Only one of his shoes was in the apartment.

J. W. Holland, a city detective from the Birmingham police department testified he interviewed Linwood Martin the first time on the morning of November 22nd around 8:00 A.M. at the city jail. No one else was present. Proper predicate as to voluntariness was laid and Holland then testified that Martin made an oral statement to him in which he said that he had been up on a hill a short distance from his house to help put out a fire and during the fire he saw Barbara Dixon there and talked to her. She told him she would be spending the night with Ruth Hicks. He stated that around midnight he knocked on the window and Barbara Dixon opened it and he crawled inside and sat on the bed talking to her. When Ruth Hicks came in to the room he jumped out the window and left one shoe in the room. When he jumped he fell and found the butcher knife on the ground. Officer Holland took a stenographer to the jail at about nine A.M., the same morning and Linwood Martin made the same statement to him. That afternoon he went back to the jail to get the statement signed but Martin refused to sign it. He stated at that time that he saw Barbara Dixon at the fire and he knew she was spending the night with Ruth Hicks and after drinking some whiskey he went there and opened the window and went inside, but that he did not touch the girl. He still contended that when he jumped out the window after Ruth Hicks came in the room he found the knife on the ground.

On cross examination Officer Holland stated that he interrogated defendant two and a half or three hours in the morning and approximately an hour that afternoon. He did not try to get him to change the story which he had told him earlier that morning. He knew at the time defendant

had not been arraigned and did not have counsel. No·objections were interposed to the introduction of the confession.

Ruth Hicks was recalled by the state and testified she closed her back door with a butcher knife. She identified the knife which was introduced in evidence and said it was in her door when she went to bed. The knife was not in the back door after Martin left the house that night.

█ To constitute burglary it is essential to prove a breaking into and entering of the house in question. If a door or window be open and entry is made through it this is not a breaking. The state is not required to prove the entrance door or window was locked. If entry is made by opening a closed door this is sufficient to show a breaking. Adair v. State, 19 Ala. App. 174, 95 So. 827; Cox v. State, 33 Ala.App. 395, 34 So.2d 179.

The state proceeded on two theories; (1) that defendant entered the house by the bedroom window which he opened; or (2) that he broke open the back door.

█ The State has the burden of proving the corpus delicti independently of the defendant's confession before conviction can be upheld. Hill v. State, 207 Ala. 444, 93 So. 460; Singleton v. State, 33 Ala.App. 536, 35 So.2d 375; Pate v. State, 36 Ala. App. 688, 63 So.2d 223; Gamble v. State, 36 Ala.App. 581, 60 So.2d 696.

We agree with defense counsel's argument that in the absence of the contradictory confession of the defendant the proof in this record, and the inferences to be drawn therefrom are not sufficient to make out a case of burglary. The state's evidence does not affirmatively show a forcible entry. The state's evidence shows that Ruth Hicks' four children were in the bedroom and her husband left the house about the time some of the others went to bed. The evidence does not negative the fact that one of these persons opened a door or window through which the accused entered the house.

We are of opinion the court erred in refusing the affirmative charge requested in writing by the defendant. The judgment is reversed and the cause remanded.

Reversed and remanded.

JOHNSON, Judge (dissenting).

I observe no question of law presented for review.

I am convinced that a careful study of the State's evidence in this case indicates that a jury question was presented as to whether or not the appellant "with intent to ravish, in the nighttime, broke into and entered the inhabited dwelling house of Ruth Hicks."

I, therefore, most respectfully dissent from the majority opinion.