227 So.2d 822

**Jimmy SCHOFIELD**

**v.**

**STATE.**

**3 Div. 1.**

Court of Criminal Appeals of Alabama.

Oct. 7, 1969.

Rehearing Denied Nov. 4, 1969.

Certiorari Denied Dec. 4, 1969.
See 229 So.2d 26.

MacDonald Gallion, Atty. Gen., and Richard F. Calhoun, Asst. Atty. Gen., for the State.

Williamson & Taber, Greenville, for appellant.

CATES, Judge.

Schofield appeals from a second degree burglary conviction on which he was sentenced to spend six years in the penitentiary.

## I

For a statement of facts, we borrow, with some omissions, from Schofield's brief:

During the early morning hours of July 13, 1967, two police officers of the City of Greenville, Alabama, Joe Herring and Danny Joe Dukes, were working the night shift in a patrol car. At approximately 3:11 A.M., these officers received a radio call that the burglar alarm system at a manufacturing plant, Acme Industries, immediately North of the City had been activated.

The patrolmen proceeded to the plant, some 4 or 5 miles and pulled into the West side. Officer Herring got out of the patrol car on the West side of the plant and checked several doors on that side. He found all doors closed and was unable to discern anything inside the plant by shining his flashlight through the openings in the doors. He then returned to the patrol car and they drove around the plant to the East side. The patrolmen testified that, as they approached the third door along the East side, they observed Appellant, Jimmy Schofield, coming out. They identified Appellant as being dressed in a red shirt with dark trousers. The police officers also identified two other persons accompanying Appellant who were known to them. These other persons were Dan Kelsoe and Carson Kelsoe.

The officers testified that the door through which they saw Appellant leave the building was open three or four feet with a pipe propping the door up, and that the Appellant and his companions merely stooped down and came out through this open door.

The officers ordered the suspects to halt. This they did not do, but beat a hasty retreat to the South of the Acme plant. Officer Herring fired his shotgun at the fleeing trio two or three times. The officers did not pursue the culprits after firing at them. They then called Officer Pettus Chambliss and Officer Morris to assist them in the investigation of the crime, and they remained at the building until these other officers arrived.

Assistant Police Chief, Pettus Chambliss, assumed charge of the investigation. Several coin vending machines had been broken open. Along the path taken by the suspects, the officers found three shoes along with a quantity of change that had' been wrapped in a white tee shirt. Rather than proceed immediately to arrest the suspects who had been so positively identified by the Officers Herring and Dukes, Officer Pettus Chambliss sought and obtained search warrants for a maroon or dark red shirt. He stated that the search warrants were executed but they were able to turn up none of the articles covered.

Appellant · was ultimately arrested for the crime on July 18.

Appellant introduced witnesses who testified to the effect that they had seen him in Greenville on the night in question and that he was not dressed in a red shirt as described by the patrol officers. Appellant had remained in the general community, going about his day to day activities, between the time of the purported crime and the time of his arrest. At the end of Defendant's case, the Court recessed the jury until 9:00 A.M. the following morning and allowed the jury to separate.

## II

■ Appellant's counsel has complied with Supreme Court Rule 9 as to giving a "condensed recital of the evidence given by each witness in narrative form * * *." This provision does not apply to appeals involving felonies or misdemeanors because the Rule limits the recital to an *assignment* grounded on insufficiency of the evidence.

Code 1940, T. 15, § 389 provides:

"In cases taken to the supreme court or court of appeals under the provisions of this chapter, no assignment of errors or joinder in errors is necessary; but the court must consider all questions apparent on the record or reserved by bill of exceptions, and must render such judgment as the law demands. But the judgment of conviction must not be reversed because of error in the record, when the court is satisfied that no injury resulted therefrom to the defendant."

Such recital, therefore, neither adds to or takes from a criminal appellate brief.

### III

The first claim of error is that the State failed to prove any breaking on Schofield's part. Reliance is put on Martin v. State, 44 Ala.App. 395, 210 So.2d 704.

In *Martin,* however, Price, P. J., was careful to point out:

"* * * The state's evidence shows that Ruth Hicks' four children were in the bedroom and her husband left the house about the time some of the others went to bed. The evidence does not negative the fact that one of these persons opened a door or window through which the accused entered the house."

In the instant case, the State offered proof that the night foreman was the last to leave at the end of the night shift. This witness testified that he closed all the doors and set the burglar alarm. The burglar alarm would have sounded unless all the doors were closed. The alarm did not go off when he turned the switch for the alarm system.

We note that Officer Duke could hear the alarm clearly in and around the building. Flight and the dropping of the coins were also facets of the State's case.

We consider that the State adduced proof from which, if believed to the re-

quired degree, the jury could infer that Schofield had broken into and entered the building. Washington v. State, 44 Ala. App. 516, 214 So.2d 867(2).

### IV

Without the consent of either the Appellant or his attorney, the jury was allowed to separate both during the luncheon recesses and the overnight recess of the trial.

Appellant claimed, in grounds 18, 19 and 20 of his motion for a new trial, that this act of the court was cause for reversal. At the hearing on this motion, the State attempted to show that during the separations, none of the twelve jurors spoke to anyone on any subject affecting the defendant's guilt and that no influences were exerted against any juror which would have biased his deliberation. Only nine of the jurors actually testified at this hearing but it was stipulated by the appellant at the beginning of the hearing that the other three jurors had not been influenced and had talked with no one concerning the case during the separation (R. p. 141). The motion for a new trial was denied by the trial court.

Mrs. Sandra Peterson, a juror, testified during the hearing on the motion for new trial on cross-examination by Mr. Taber that, during a coffee break, she "mostly sat out here and maybe went down in the basement, but mostly I sat out there with this woman, she was one of the witness(es) out there and I talked with her while we were sitting out there." It was not brought out, however, what they talked about.

Mrs. Peterson had testified on direct examination that no one, other than another member of the jury, discussed the case with her or had anything to say to her *that had any bearing on the decision she gave* while on the jury.

The only two female witnesses before the jury where Mrs. Edna Kelsoe and Mrs. O. V. Rigsby, both of whom were called by the defense.

Mrs. Kelsoe was the mother of Carson and Dan Kelsoe. State witness Herring testified these two were with Schofield at the scene when Herring came to the Acme Plant.

Mrs. Rigsby was the defendant's mother-in-law.

Both these women testified that—in contradiction to the testimony of prosecution witnesses—Schofield was not wearing a red shirt on the night of instant concern. Also, their testimony tended to make out a defense of alibi.

 We have three well-settled rules: *First,* during the trial of a felony [1] the jury is to be kept together; *Second,* if the jury does separate, that fact is, prima facie, error to reversal; and *Third,* to overcome this presumption of error, the State has the onus of establishing that the separated juror or jurors were not subject to influence or contacts which *might* have swayed them in reaching the verdict.

· We use "might" to reflect the test of vitiating influence laid down in Roan v. State, 225 Ala. 428, 143 So. 454(26), i. e. "not that it did influence a member of the jury to act without the evidence, but that it might have unlawfully influenced that juror and others * * *." See Oliver v. State, 232 Ala. 5, 166 So. 615.

In Mitchell v. State, 244 Ala. 503, 14 So.2d 132(3), Bouldin, J., speaks of these rules as:

"* * * safeguards against the hazards of outside contacts, which may, with no fault of the juror, so enter into his thinking as to influence his verdict unawares."

See also Tidwell v. State, 37 Ala.App. 228, 66 So.2d 845(5), (6).

 In view of *Tidwell,* supra; Wright v. State, 38 Ala.App. 64, 79 So.2d 66, 70; Christison v. State, 39 Ala.App. 175, 96 So.2d 701; Golden v. State, 39 Ala.App. 361, 103 So.2d 52; and Smith v. State, 39 Ala.App. 501, 105 So.2d 662, we are impelled to reverse the judgment below. If Supreme Court Rule 45 were couched in terms so that we could weigh the evidence as though the jury separation had not occurred, our conclusion might be otherwise. However, the "no other reasonable jury" test is foreclosed by our Supreme Court in Rule 45.[2]

Had the State undertaken to question the juror Mrs. Peterson again as to her conversation with the witness, then perhaps the presumption would have been overcome. However, in the condition of the instant record, we are left with an unsolved speculative enquiry in an area where the next step was up to the prosecution.

The judgment below is due to be reversed and the cause there remanded for new trial.

Reversed and remanded.

---

1. In a noncapital felony the trial judge, if apprised "beyond the hearing" of the jury of a consent (to the jury's separating) given by (a) the defendant personally, (b) his counsel, and (c) the District Attorney, he then has discretion to consider the advisability of the jury's being allowed to separate before they are discharged after verdict. Dictum by Stakely, J., in denying cert., Wright v. State, 262 Ala. 420, 79 So.2d 74. Such a consensual separation only shifts the onus of showing pernicious influence to defendant: the danger of jury tampering is not reduced. See Wiggins v. State, 39 Ala.App. 433, 104 So.2d 560.

2. Supreme Court Rule 45 states:
"Hereafter no judgment may be reversed or set aside, nor new trial granted by this court or by any other court of this state, in any civil or criminal case on the ground of misdirection of the jury, the giving or refusal of special charges or the improper admission or rejection of evidence, nor for error as to any matter of pleading or procedure, unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties.