263 So.2d 701

Willie Lee SASHNER

v.

STATE.

I Div. 190.

Court of Criminal Appeals of Alabama.

June 13, 1972.

Robert F. Ware, Jr., Chatom, for appellant.

William J. Baxley, Atty. Gen., and Don C. Dickert, Asst. Atty. Gen., for the State.

PER CURIAM.

The appellant was convicted in the lower court of a violation of Tit. 14, § 85, Code of Alabama, 1940, recompiled 1958, burglary of an inhabited house or dwelling in the nighttime, and sentenced to imprisonment for ninety-nine years and one day.

Before entering on to the trial the appellant filed a motion for a change of venue on the ground that it was impossible for him, a black male, to obtain a fair and impartial trial in the county in which the prosecution was pending. The State filed an answer denying the allegations of the petition and the court heard the testimony offered orally by the State and the appellant.

The appellant assumed the burden of proving to the reasonable satisfaction of the court that an impartial trial could not be had and an unbiased verdict could not be reasonably expected. Welch v. State, 28 Ala.App. 273, 183 So. 879; Hunter v. State, 38 Ala.App. 351, 83 So.2d 737. There was a complete absence of proof to support the motion in the instant case, and it was therefore properly overruled by the court.

The State offered evidence to show that on the night of October 13, 1969, Mrs. Joe Lundy, her two small children, and her sister, Juanita Johnson, were alone in the Lundy home in Washington County in or near the town of Millry, the husband, Joe Lundy, having left the home to go to work about 9:30 P.M. Mrs. Lundy testified that she stayed up until about midnight at which time she saw that all doors were locked and all windows closed before she retired. She and her two children, one of whom was three years of age and the other an infant, were sleeping in one bed in one of the bedrooms and her sister who was visiting for the night was sleeping alone in another bedroom of the house. A light was kept burning in the bedroom where Mrs. Lundy and her children were sleeping and she testified that

some time during the night, after she had gone to sleep, she was awakened by someone shaking her and telling her to wake up and that after she was fully awake she felt someone kiss her. After begging the intruder to leave he asked to have sexual intercourse with her and she refused. The intruder told Mrs. Lundy his name was "Willie" and she appeared to have full opportunity to look at him while he was in the room. After further conversation he began to choke her and she screamed out, awakening both children and her sister, who came to her bedroom and said, "Negro, what are you doing here?" The intruder left at that time and Mrs. Lundy obtained a shotgun and later checked through the house to see if he had gone. She identified the appellant as the person with whom she had had the encounter and testified that he had on work pants of a yellow color, a dingy shirt, a small moustache on his top lip, and the index finger of his left hand was cut off. He had been drinking and she could smell alcohol but he did not appear to be drunk. Within a few minutes she went to a neighbor's house and reported the matter, after firing the gun at least one time and screaming. The sheriff's department was notified and Sheriff Sullivan arrived soon after, at the home. State's witness Murphy, a State Investigator, testified that he made an examination of the premises and found scuff marks on the outside of the house under and near a window and found a stone which appeared to be freshly overturned from the fresh dirt which had stuck to the bottom of the stone. He further testified there were scuff marks on the window sill and that this particular window had no lock on it and would slide up and down. Pictures were introduced depicting the discoloration of the neck of Mrs. Lundy and also pictures were introduced showing the inside of the house, the stone, and the window which the alleged scuff marks were on. The window lead into a hallway going to the back of the house where there was situated a chair and water heater. The pictures were prop-

erly authenticated and were alleged to have been taken about seven o'clock in the morning after the alleged occurrence. The pictures were marked State's Exhibits A, B, C, D, E, F, G, H and I.

Appellant testified that on the night of the occurrence he was in the company of Tommy Land and that he did not remember anything that happened between 1:30 A.M. and about 5:00 A.M. when his wife found him on the front porch of her home and helped him in the house and to bed. He further testified that he was awakened by the sheriff who placed him under arrest shortly thereafter.

Defense witness Tommy Land testified that he was in the company of the appellant until about midnight on the night in question and that they had been trying to find alcoholic beverages to drink but had been unable to do so. However, he did testify that appellant was drinking, although he did not say he was drunk, but he acted like he was tight.

Appellant's wife, Susie Mae Sashner, testified that she helped the appellant off of her front porch into bed about 1:00 A.M. and that she helped take him to bed where he was when the sheriff came and got him.

It appears that the appellant had an injury to his left hand and that his index finger was cut off.

On rebuttal State's witness Juanita Johnson said she was awakened after she had gone to bed by the crying of the baby and went into her sister's room and that she had not opened a window or door before that time during the night. Mrs. Lundy further testified that she did not see anybody get up after she went to bed and that she was the last one to go to bed and that after the commotion was over she checked the doors and found they were like she had left them before she went to bed but she did not check the windows.

■ The appellant objected to the introduction of the pictures, State's exhibits heretofore referred to, on the ground "there is not sufficient evidence to connect these pictures with the case and mere specifically to the establishment to the corpus delicti of burglary in the first degree." In every instance his objection was overruled by the court. On these rulings by the court we can see no error. Whether or not the pictures tended to shed some light upon the question of breaking and entering or of the intention of the intruder to commit a felony by ravishing Mrs. Lundy would be a question for the jury to determine from the examination of the exhibits referred to and unless they shed no light whatever on the issues in this case it was the duty of the court to admit them into evidence under the circumstances.

■ The appellant further strenuously objected to the testimony of Mrs. Lundy and moved to exclude. The motion was overruled by the court. Her testimony was a part of the res gestae and there was no error in the action of the court in overruling the motion.

The indictment in this case is based upon Tit. 14, § 85, Code, supra, which provides that "Any person who, in the nighttime, with intent to steal or commit a felony, breaks into and enters any inhabited dwelling house, or any other house or building, which is occupied by any person lodged therein is guilty of burglary in the first degree."

■ It is essential that the State prove a breaking into and entering of the house, and if entry is made through an open door or window this is not a breaking. Martin v. State, 44 Ala.App. 395, 210 So.2d 704; Cox v. State, 33 Ala.App. 395, 34 So.2d 179. Martin, supra, and Sauls v. State, 29 Ala.App. 587, 199 So. 254, are relied upon in brief of appellant for a reversal of this case.

We distinguish the facts in *Martin,* supra, from those in the instant case. In *Martin* this court held the evidence was not sufficient to show a forcible entry and therefore did not make out a case of burglary. In the instant case the evidence with regard to the conditions around the window as shown by the exhibits and by the testimony of the witness Murphy was sufficient to be submitted to the jury on this question. *Sauls,* supra, does not set out the facts of the case.

In the record it appears that the appellant's attorney intended to ask the court to give the affirmative charge for the appellant, but nowhere in the record can we find a written requested affirmative charge refused by the court. In fact, we find no written requested charges refused by the court at all. No motion to exclude the testimony of the State (with the exception of that of Mrs. Lundy) was made by the appellant and no motion for a new trial was filed after the verdict. Therefore, the sufficiency of the evidence to support the verdict is not before the court. Mims v. State, 23 Ala.App. 94, 121 So. 446; Sharp v. State, 21 Ala.App. 262, 107 So. 228; Robinson v. State, 44 Ala. App. 206, 205 So.2d 524.

What we have written setting out the facts is in deference to the earnest brief of appellant and, in our opinion, had the affirmative charge been asked in writing and refused by the court, it would not have been error.

We have carefully reviewed the record and find no error to reverse. The judgment in this cause is therefore due to be affirmed.

The foregoing opinion was prepared by W. J. HARALSON, Supernumerary Circuit Judge, and adopted by this court as its opinion.

Affirmed.

All the Judges concur.