Appellant was convicted of robbery and sentenced to imprisonment in the penitentiary for ten years. He was arraigned in the presence of counsel and pleaded not guilty. After sentence was imposed, he gave notice of appeal and made application for a free transcript. He was found to be indigent and he was furnished a free transcript. New counsel was appointed to represent him on appeal.
The evidence adduced by the State is undisputed that on July 9, 1975, about 7:00 p.m., the Boylston Food Market was robbed by a lone bandit with a sawed off shotgun. The store was closed at the time and there were only two employees in the store at the time of the robbery. Mrs. Nina Gross was the person in charge of the store and one Bobby Kimbro was helping her check the money and to secure the store.
Appellant was employed at the store as a meat cutter and had been so employed for six or seven weeks prior to the robbery. His usual hours of employment were from 8:00 a.m. until 5:00 p.m., but on the night of the robbery his time card showed that he "clocked out" at 5:41 p.m. The State's evidence tended to show that appellant planned and set the stage for the robbery before he left work on July 9, 1975.
Mrs. Gross testified that she had just counted the money and checks that were taken in from the sales made that day and had put them in two bank bags furnished by the Alabama National Bank and had locked the safe for the night. It was her intention to carry the money with her to *Page 148 
her home that night and make a deposit the next day. The next thing she knew, a person was standing next to her with a shotgun and demanding all of the money in bills and told her that if she did not open the safe and give him the money, he was going to kill her. She looked at the bandit and found that he was completely masked and there was no way for her to identify him. She opened the cash register and told him that she would get him the change and he told her that he did not want the change, all he wanted was currency. She opened the safe to show him that all the currency was in the bank bags. He ordered her to the rear of the store along with Bobby Kimbro and when they reached the back of the store, he tied Mrs. Gross's hands together with tape and put her in the cooler. He discovered that the back door was locked and asked for the keys. She told him the keys were on her key ring and in the lock at the front door. The robber then pointed the gun at Bobby Kimbro and forced him to walk to the front of the store and get the keys and with the gun still pointed on him, he made him unlock the back door. He then put Kimbro in the cooler with Mrs. Gross and tied his hands with tape also. He told them to stay in the cooler and if they came out, he was going to kill them. He made his escape out of the back door.
Mrs. Gross and Bobby Kimbro waited until they could hear no one moving around and they untied themselves and reported the robbery to the Montgomery Police Department and an officer immediately came to the scene. He went in the back and in the rest room he noticed that the window was raised and was supported by a roll of tissue paper and he saw on top of the cooler the tracks of some tennis shoes in the dust on the cooler, but he found no other evidence of the robbery at that time. Mrs. Gross and Kimbro also saw the raised window and the toilet tissue on the window sill to hold up the window.
Bobby Kimbro testified that he knew appellant well and knew also that he was a friend of one Danny Weeks; that Danny Weeks had a brother named Larry and all of them lived in Boylston at one time. He further testified that a few weeks before the robbery that appellant and Danny Weeks had rented a trailer at Central in Elmore County and were living in the trailer at the time of the robbery.
There was a lot of publicity concerning this robbery and Danny Weeks decided that he would surrender to the police department where he was given the Miranda rights and warnings and he signed a waiver of rights form. He gave a written statement to the police in which he confessed that he was the bandit with the shotgun and took the money from Mrs. Gross and tied her hands and the hands of Bobby Kimbro and put them in the cooler.
A voir dire hearing was held out of the presence and hearing of the jury and the Court determined that the confession was voluntary. In this confession Danny Weeks stated that appellant had planned the robbery, telling him that a girl that he had been going with was in trouble and he needed a lot of money so that she could have an abortion. The statement of Weeks further detailed how the robbery was set up by appellant. That appellant told him that the store closed at 7:00 p.m. and for him to be at the store at 5:30 and he would let him in the back door and that when the store was closed and all the lights were cut off except one that he would know then that they were counting the money and that was the time for him to leave the rest room and rob the store.
The confession of Weeks further was to the effect that during the lunch hour on July 9, 1975, he and appellant went to the appellant's mother's home where appellant got his .410 gauge shotgun and turned it over to Weeks. He told Weeks that he would raise the window to the rest room and prop it open and for him to bring the gun and give it to him through the open window in the rest room. The statement of Weeks further was to the effect that after getting the shotgun, he got a hacksaw and sawed the gun off and placed it in the back of his car, that his brother Larry came to his house and just before 5:30, Danny asked *Page 149 
his brother Larry to ride with him to the store.
When they got to the store, Danny asked Larry to take the gun and hand it to appellant through the open window in the rest room of the store and he watched Larry hand the shotgun through the open window and saw appellant take the shotgun; that Larry did not know that a robbery was going to take place. After the shotgun was turned over to appellant, Danny got out of the car and told Larry to drive the car on home and he would pick it up later. Larry was staying with his mother in Chisholm. Danny had gotten a woman's stocking and a blue pillow case to put over his head and face so that no one would recognize him.
After Larry drove Danny's car away from the store, Danny went into the store and appellant put a ladder up beside the cooler so that Danny could get on top of the cooler and wait until the store closed and then commit the robbery. In the meantime appellant had agreed with Larry that at about 20 minutes after 7:00, he would be parked on the northern bypass which was not too far from the Boylston Food Center. Before Danny rode with Larry to the store, he had cut the wire leading to the northern bypass so that he could exit to the bypass and get in the car with appellant.
After the robbery Danny went through the cut place in the wire to the northern bypass and he found that appellant was not there waiting on him as they previously had agreed upon. When Danny found that appellant was not waiting on him, he went down into some woods and hid the sawed off shotgun and the money bags and stayed in the woods until early the next morning when he went to his mother's house and got his car and went to the trailer that he and appellant rented in Central, Alabama. Danny engaged in an argument with appellant for leaving him stranded on the northern bypass and appellant told him that he heard the police siren and he thought that they had caught Danny and so he just left.
In Danny's statement he told the police officers that the arrangement that he had with appellant was that Danny was to get two-thirds of the proceeds of the robbery and that appellant was to get one-third. He stated that a couple of days later he went back into the woods where he had hid the money and the gun and got the money and the gun and carried them to the trailer in Central. He said there were approximately $1700 or $1800 in cash and a great number of checks; that he took the money and most of the checks with him to the trailer at Central where he burned the checks and gave appellant his one-third of the money. Of the balance, Danny spent $150 to $300 buying clothes for himself and that when he surrendered to the police, he turned over to them about $1200.
Based upon the signed confession made by Danny Weeks, appellant was picked up for questioning. He was given theMiranda rights and warnings and the officer asked him if he understood his rights and he said he did. He signed a waiver of rights form and told the investigating officer that he would make a statement but that he was not going to sign it. He gave the officer an oral statement which was taken down by the interrogating officer and after the statement was completed, the officer read the statement to appellant and appellant told him that the facts set out in the statement were true. The statement corroborated the confession made by Danny Weeks in every respect. After the officer completed writing the statement on the typewriter, he asked appellant if he would sign it and appellant stated no, that he was not going to sign anything.
He did tell the officer however that if he would take him to the District Attorney and that if the District Attorney would promise to help him, he would sign it. The officer told him he could not do that and appellant again refused to sign the statement.
After the investigating officer learned that Weeks had taken some of the checks from the Boylston Food Market to the trailer occupied by him and appellant at Central, and had burned them, he went to Wetumpka and secured a search warrant from the Circuit Judge and got a deputy *Page 150 
sheriff from Elmore County to accompany him to Central. He looked in a drum in the yard and found several partially burned checks but they were so badly burned that they could not be used for any purpose. He searched the trailer and found some narcotics and narcotic paraphernalia. When they got back to Wetumpka, the deputy signed a warrant for the arrest of appellant and Danny Weeks for possession of narcotics. The investigating officer got a certified copy of the warrants and brought them to Montgomery. He had another conversation with appellant during which he again gave him the Miranda rights and warnings before asking any questions. Appellant admitted that he was a narcotic user and that he was taking narcotics regularly. He further admitted that he was on probation from a federal narcotic conviction at the time the robbery was committed.
There was a voir dire hearing out of the hearing and presence of the jury to determine the voluntary character of appellant's oral confession to the interrogating officer, but since appellant did not sign the completed statement, the Court ruled that the unsigned statement could not go to the jury but he allowed the officer to read to the jury the statement given to him by appellant, in which appellant admitted that he had conceived the idea of robbing the Boylston Food Market where he was employed.
There were some minor discrepancies in the oral statement that he gave to the officer and the written statement signed by Danny Weeks but the discrepancies were of no significance so far as the crime of robbery was concerned.
Appellant took the witness stand in his behalf and repudiated his statement given to the officer in which he admitted his participation in the robbery.
The only issue raised on this appeal, in which reversible error is claimed, is the action of the prosecuting attorney in his closing argument to the jury wherein he expressed his opinion that Danny Weeks did not lie. This argument, if improper, cannot be reached on this appeal as appellant's counsel did not object to the argument and, thus, no ruling of the trial court was invoked. Irons v. State, 42 Ala. App. 349,165 So.2d 125; White v. State, 40 Ala. App. 378, 114 So.2d 325;Smith v. State, 46 Ala. App. 99, 238 So.2d 898; Embrey v. State,283 Ala. 110, 214 So.2d 567.
At appellant's request the Court gave the following written charge:
 "I charge you, members of the jury, that the assertions of counsel are not evidence in this case and should not be considered by you."
The law is clear that a prosecutor should never express his personal opinion as to the guilt of the accused as such expression invades the province of the jury. The prosecuting attorney did not express such an opinion in this case.
A confession without independent evidence of the corpus delicti is not sufficient to support a conviction. King v.State, 49 Ala. App. 111, 269 So.2d 130; Martin v. State,44 Ala. App. 395, 210 So.2d 704; Connell v. State, 39 Ala. App. 531,105 So.2d 695.
The corpus delicti of the crime of robbery was clearly established by the testimony of Mrs. Gross and Bobby Kimbro prior to appellant's confessory statement. The trial court determined that appellant's confession was voluntary. The State laid the proper predicate for the admission of appellant's oral statement to be read to the jury. We hold the statement was properly read to the jury. Elrod v. State, 281 Ala. 331,202 So.2d 539.
As above stated appellant took the stand and repudiated his confession. This is not unusual as we observed in McNair v.State, 50 Ala. App. 465, 280 So.2d 171:
 "This Court has previously recognized the fact that it is not unusual for the voluntariness inquiry to present conflicting evidence. Edgil v. State, 36 Ala. App. 379, 56 So.2d 677. When such a conflict occurs and the trial judge finds that the confession was voluntarily made, great weight must be given to his judgment. This finding will not be disturbed on appeal *Page 151 
unless the appellate court is convinced that the conclusion is palpably contrary to the weight of the evidence. Emerson v. State, supra [281 Ala. 29, 198 So.2d 613]; Harris v. State, 280 Ala. 468, 195 So.2d 521; Edgil v. State, supra. Even where there is credible testimony to the contrary, if the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed, the ruling of the trial judge need only be supported by substantial evidence and not to a moral certainty. Minirth v. State, 40 Ala. App. 527, 117 So.2d 355, cert. denied, 270 Ala. 228, 117 So.2d 360."
We have carefully examined the record for errors injuriously affecting the substantial rights of appellant and have found none.
The judgment of conviction is affirmed.
AFFIRMED.
All the judges concur, except CATES, P.J., not sitting.