219 So.2d 369

**Charles Clarence HAMILTON**

**v.**

**STATE of Alabama.**

**6 Div. 83.**

Supreme Court of Alabama.

Feb. 13, 1969.

MacDonald Gallion, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

Orzell Billingsley, Jr., and Peter A. Hall, Birmingham, and Frank H. Heffron, New York City, for appellant.

**LIVINGSTON, Chief Justice.**

This appeal is from appellant's conviction in the Circuit Court of Jefferson County, Alabama, of burglary in the first degree with sentence of life imprisonment.

On December 23, 1963, Charles Clarence Hamilton, appellant, was convicted by a jury of the offense of breaking and entering an inhabited dwelling in the nighttime with the intent to ravish. Title 14, Sec. 85, Code of Alabama 1940.

The indictment under which the appellant was convicted was returned by the Grand Jury of the Circuit Court of the Tenth Judicial Circuit on February 8, 1957 and contained two counts of burglary in the first degree. The first count alleged that the appellant "in the nighttime, with intent to steal, did break into and enter the inhabited dwelling house of Jacob C. Milko, a person lodged therein." The second count alleged that the appellant "in the nighttime, with intent to ravish, did break into and enter the inhabited dwelling house of Jacob C. Milko, a person lodged therein, against the peace and dignity of the State of Alabama."

Hamilton was first indicted on November 9, 1956, and this indictment contained only one count charging him with burglary of an inhabited dwelling in the nighttime with intent to steal. He was arraigned on that indictment on January 4, 1957. He pleaded not guilty. Court-appointed counsel represented Hamilton at this arraignment when the plea was entered.

A second indictment against Hamilton was returned on February 12, 1957, and it contained two counts. One count charged burglary of an inhabited dwelling in the nighttime with intent to steal, and the other count charged burglary of an inhabited dwelling in the nighttime with intent to ravish.

Both indictments related to the same incident, that is, the breaking and entering of the inhabited dwelling of one Jacob C. Milko during the early morning hours of October 13, 1956.

The lawyer who had been appointed to defend Hamilton against the first indictment was advised by the state's prosecutor that the second indictment had been returned and that Hamilton would be "rearraigned" and the case set for trial.

Hamilton was arraigned on the second indictment on March 1, 1957, and again he pleaded not guilty. However, neither the lawyer who had been appointed to defend him against the first indictment nor any other lawyer appeared on his behalf at this "rearraignment" under the second indictment. The court did not appoint a lawyer to defend Hamilton against this second indictment until March 4, 1957, when the same lawyer was appointed who had been appointed to defend him against the first indictment.

Appellant was brought to trial on the second indictment on April 23, 1957, when a jury found him guilty under the second count of the indictment and inflicted the death penalty. The first indictment was "nolle prossed" on April 24, 1957. This court affirmed the conviction on September 17, 1959, Hamilton v. State, 270 Ala. 184, 116 So.2d 906, cert. denied, 363 U.S. 850, 80 S.Ct. 1638, 4 L.Ed.2d 1737. A petition for leave to file an application for writ of error coram nobis was denied by this court on August 15, 1960, Ex Parte Hamilton, 271 Ala. 88, 122 So.2d 602. The United States Supreme Court granted certiorari, Hamilton v. Alabama, 364 U.S. 931, 81 S.Ct. 388, 5 L.Ed.2d 364, and reversed in 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114.

Following this reversal by the U. S. Supreme Court, and upon motion of his counsel, appellant was committed to the Alabama State Hospital at Mt. Vernon on February 13, 1963, and returned to the jurisdiction of the Circuit Court for trial in June, 1963.

On June 21, 1963, appellant filed a motion to quash the indictment on the ground of systematic exclusion of Negroes from grand juries in Jefferson County. On July 22, 1963, a hearing was commenced on this question. On August 9, 1963, the motion to quash the indictment was denied.

On September 27, 1963, a second motion to quash the indictment was filed in the Circuit Court alleging inter alia that the indictment was unconstitutionally vague and did not set out any crime with sufficient clarity to inform the defendant of what he was called upon to defend; that the indictment was void and of no effect because the defendant had been previously tried and convicted under that indictment, which conviction was reversed by the U. S. Supreme Court; that another trial on the same indictment placed the defendant twice in jeopardy of his liberty and life. Also, on September 27, 1963, appellant filed a demurrer stating the same grounds as those contained in the motion to quash the indictment. In both the motion to quash the indictment and the demurrer filed on September 27, 1963, appeared a claim alleging deprivation of appellant's rights under the Fourteenth Amendment to the Constitution of the United States. On October 4, 1963, the motion to quash the indictment and the demurrer were overruled.

Appellant was arraigned, with counsel representing him, on October 4, 1963. He pleaded not guilty and not guilty by reason of insanity.

On December 9, 1963, appellant filed a motion to dismiss prosecution on the ground that he had been effectively deprived of his defense of insanity because of the state's failure to provide counsel at the original arraignment, in violation of the Fourteenth Amendment to the United States Constitution and in violation of the mandate of the United States Supreme Court issued in this cause. The state filed a motion to strike the motion to dismiss. The Circuit Court granted the motion to strike, but allowed appellant to place in the record a proffer of testimony by a qualified psychiatrist in support of appellant's motion to dismiss.

On December 9, 1963, appellant filed a plea of autrefois acquit alleging that count one of the indictment, charging burglary with intent to steal, should be dismissed on the ground of acquittal on that count by the jury at appellant's original trial. This motion was granted by the trial court.

On December 9, 1963, appellant filed a motion to quash the venire on the ground that Negroes in Jefferson County had been systematically excluded from jury service. The evidence taken on the motion to quash the indictment on the ground of systematic exclusion of Negroes was considered by the court for purpose of the motion to quash the venire, and the motion to quash the venire was denied.

On December 10, 1963, appellant filed a motion to declare void the composition of the jury sworn to try defendant on the ground of systematic exclusion of Negroes. This motion was denied. The trial commenced on this same date.

At the close of the state's case, appellant moved to dismiss, and filed a written motion to exclude the testimony and for judgment. These motions were overruled.

The jury found appellant guilty of burglary as charged in count 2 of the indictment and he was sentenced to life imprisonment on December 11, 1963. Appellant filed a motion for new trial on January 7, 1964. This motion was submitted to the court and overruled on February 21, 1964. Notice of appeal was filed on March 6,

1964. The transcript of the evidence furnished appellant at state expense was filed March 26, 1965 after several extensions of time to file were granted appellant's lawyers.

The state's evidence tended to prove the following: On the night of October 13, 1956, Mr. and Mrs. Jacob C. Milko were occupying a dwelling house located at 1501 Avenue G, Ensley, Jefferson County, Alabama. Mr. and Mrs. Milko were living with the grandparents of Mrs. Milko. The grandparents were Jake and Mary Giangrosso, each of whom occupied separate sleeping quarters located in different parts of the house. Mrs. Giangrosso's bedroom adjoined that of Mr. and Mrs. Milko and was connected by a door between the two bedrooms. There were two entrances to the house, a front or main entrance, and a rear or back entrance. The front or main entrance opened into Mrs. Giangrosso's bedroom and it was the Milkos' custom to enter through this front door in order to enter the room which adjoined Mrs. Giangrosso's which was occupied by the Milkos. The family shared a common bath but separate kitchens were available. Mr. Giangrosso occupied a bedroom in another part of the house.

During the early morning hours, sometime between 2:00 and 3:00 a.m. of October 13, 1956, Mr. and Mrs. Milko were awakened by a sort of moaning yell coming from Mrs. Giangrosso in the adjoining bedroom. Mr. Milko got out of bed and opened the door leading into Mrs. Giangrosso's bedroom, where he observed the defendant, Charles Clarence Hamilton, standing near the door between the two bedrooms. Mr. Milko testified that he saw appellant standing with his trousers off and his privates exposed and wearing neither shoes nor socks. He further testified that he was positive that he locked the front door when he came in from work earlier that evening, but that when he found the defendant in Mrs. Giangrosso's bedroom, the front door was open; that

after he observed the defendant, he went back in his bedroom and procured a revolver, returned to hold the defendant at gun point while Mrs. Milko left to call the police. A few moments later, two police officers arrived and took the defendant into custody. Mr. Milko also testified that he was employed by the Tennessee Coal, Iron and Land Company, Transportation Division, and that on the day in question his usual working hours were from 3:00 p. m. until 11:00 p. m., but that he got off from work a quarter to 11:00 p. m. and went on home; that when he got home he found that his wife, her grandmother and grandfather had all retired for the evening; that he unlocked the front door leading into Mrs. Giangrosso's bedroom, entered, locked the door back again and went through the elderly woman's room into his own bedroom.

Other testimony showed that Mrs. Giangrosso was in her late sixties partially blind, somewhat feeble, suffering from a heart condition and generally in very poor health; that she was a native of Italy, spoke broken English, and when she spoke, she was difficult to understand except for those who were frequently around her.

Mrs. Milko's testimony was substantially the same as that of her husband, except that she also testified that she had seen the defendant on previous occasions walking in front of the dwelling in question and that on one of those occasions she observed the defendant place his hand in front of his abdomen and then look at her while making obscene gestures with his hands.

Appellant did not take the stand in his own behalf and the only testimony in his behalf was that of a psychiatrist, Dr. Robert Coles. His testimony concerned only the issue of insanity and was to the effect that the defendant had paranoid tendencies in his thinking. On cross-examination, Dr. Coles testified that the defendant knew right from wrong and could restrain himself; that probability of par-

anoia would not effect his ability to distinguish between right and wrong. This witness also testified that he was aware of the defendant's military history and that the medical report from the Armed Services showed no psychiatric trouble; that he was also aware that the approximately four months which the defendant spent in the State Mental Institution at Mt. Vernon showed that defendant was sane; that his two-hour meeting with the defendant could not have been as thorough as either the Armed Services report or the report of the State Institution.

Appellant's first assignment of error alleges a fatal variance between the indictment, which alleged that appellant entered "the inhabited dwelling house of Jacob C. Milko, a person lodged therein," and the proof which appellant claims showed to the contrary. The argument here seems to be that the dwelling house in question was not that of Jacob C. Milko but that, in fact, it was owned by Mrs. Giangrosso and that it was not a single dwelling house per se but rather a single dwelling house converted into two separate apartments, one for the owners, the Giangrossos, and the other, we assume logically from the argument, for rent to the general public. Appellant contends that the testimony bears out his contentions. We do not agree.

The testimony of Mrs. Milko established the fact that the dwelling was shared by the Milkos and Mrs. Milko's grandparents, each of whom occupied separate sleeping quarters, i. e., the Milkos occupied one bedroom, Mr. Giangrosso another, and Mrs. Giangrosso, because of her infirm condition, yet another. The witnesses' testimony further established that all household members used the same bathroom but that separate kitchen facilities were available, and significantly, that the Milkos used the front or main entrance regularly, thereby necessitating ingress and egress through the aged grandmother's bedroom at all hours of the day and evening.

Contrary to the contentions of appellant, we are clear to the conclusion that the arrangement of the living quarters was rather for the mutual benefit of this closely-knit Italian family, grandparents and grandchildren, as opposed to what seems to be appellant's idea that the arrangement of living quarters was strictly a business venture for profit, available not just to the immediate family involved but to the general public, the latter being a necessary corollary to support appellant's theory of two separate apartments. We find no merit in this argument. On the contrary, we find one family, though two couples, sharing a single dwelling house for mutual benefit and exigency. Accordingly, since Mr. Milko was in possession of the premises named in the indictment, we reaffirm the position taken in Fuller v. State, 28 Ala.App. 28, 177 So. 353, that:

> " 'Burglary, like trespass, is an offense against the possession, and hence the test for the purpose of determining in whom the ownership of the premises should be laid in an indictment is not the title, but the occupancy or possession at the time the offense was committed. * * *' "

We find no merit in appellant's assignment of error 1.

Assignment of error 2 asserts, in substance, that there was insufficient evidence of breaking and entering. Appellant contends that the state failed to prove that he committed an act of breaking. The argument is that all the evidence established was that the front door was locked before appellant entered; that there was no evidence whatever to show that appellant either broke down the door or picked the lock, or unlocked the door with a key or did anything of the sort; that there was no proof that appellant was not let in by the elderly Mrs. Giangrosso, and that, therefore, the state failed to carry the burden of proof and the appellant was due the affirmative charge.

■ We cannot agree with the above contentions. It appears to us that the fact that there was unequivocal undisputed testimony that the front door leading directly into the elderly woman's bedroom was locked for the night, coupled with the fact that when the defendant was discovered in said bedroom, he was without his pants and shoes, and his privates exposed, and the door from the outside leading into the room was open, was more than sufficient evidence for the trial court to allow the case to go to the jury, particularly because of the fact that appellant offered no testimony as to how he came to be in Mrs. Giangrosso's bedroom under the circumstances and at that late hour. Behel v. State, 40 Ala.App. 689, 122 So.2d 537, and authorities cited. We hold, therefore, that where the state makes out a prima facie case presenting uncontroverted evidence that a possible crime has been committed by the accused, a trial judge may allow the case to go to a jury to consider all the circumstances and evidence submitted to them. McCall v. State, 262 Ala. 414, 79 So.2d 51, and authorities cited. And, in appropriate cases, whether or not the crime be consummated, the question of intent is always a jury question. Accordingly, we find no merit in assignment of error 2.

Assignment of error 3 claims, in substance, that there was insufficient competent evidence of intent to ravish, and that the indictment was unconstitutionally vague.

■ Both claims have already been answered, directly or indirectly, adversely to appellant. We reiterate that the question of intent, in this case the intent to ravish, is a jury question to be decided from all the surrounding circumstances and evidence presented. The jury had more than ample evidence in this case from which to determine that it was appellant's intent to ravish, i. e., appellant's unexplained presence in the boudoir of a married woman, without pants and shoes, and with his privates exposed, after 2:00 a. m. in the morning. As for the alleged vagueness with regard to the absence in the indictment of a named person that appellant allegedly intended to ravish, we think the fact that the indictment included that it was "the inhabited dwelling house of Jacob C. Milko, a person lodged therein," was sufficient to apprise the defendant of what he was called upon to defend with regard to this matter. We find assignment of error 3 without merit.

Assignment of error 4 asserts "Appellant's conviction must be reversed because of the unconstitutional failure to appoint counsel at his first arraignment in 1957 severely prejudiced the preservation and presentation of his insanity defense."

This contention is untenable. In the first place, the U. S. Supreme Court's decision reversing this court's denial of appellant's application for leave to file a writ of error coram nobis may have been a necessary action for it, in its wisdom, to take when the "critical nature" theory of Alabama's arraignment proceedings is understood: We are confident, however, that a necessary corollary to the U. S. Supreme Court's ruling in the matter does not, as appellant contends, render his retrial on the same charge impossible.

In the second place, the attorney appointed by the court to represent appellant after his first arraignment had previously stated by affidavit to this court that "he would not have entered any different plea than the plea that was entered by the defendant on March 1, 1957." (However, it was within his province to request the trial court's leave to withdraw the "not guilty" plea entered by appellant without benefit of counsel.)

■ To be sure, one, who, as a result of a judicial proceeding is declared to be legally insane, cannot be made to answer for his criminal conduct during the course of his incompetency. Any verdict or judgment rendered against a person suffering from such incompetency would be void.

When the legal incompetency is removed, however, the individual is ready to stand trial.

█ There is a distinction to be made between one who is insane at the moment the crime is committed, and one who is or becomes insane at the time of his trial, though he may or may not have been insane at the moment the crime was committed. In the former instance, such an individual is legally competent to stand trial and to answer for his crime. In the latter instance, one who is insane cannot be legally made to answer for his criminal actions until his incompetency is removed.

The appellant was shown to be sane at the time of his retrial. It was at appellant's own insistence that a psychiatric examination was had immediately preceding his retrial. The examination revealed that appellant was sane and competent to stand trial under Alabama law.

These findings were substantiated by appellant's previous medical history from the armed services which showed no trace of mental or emotional instability and was completely negative along this vane.

A more recent medical appraisal (had upon reversal of appellant's conviction by the U. S. Supreme Court upon motion of appellant's own counsel) was undertaken at the State Mental Hospital at Mt. Vernon. The appellant was observed for approximately four months by the staff at the hospital and the superintendent reported that appellant was sane and competent to stand trial.

If the appellant were contending, and could prove, that he was tried while insane, irrespective of whether he was insane at the time the crime was committed, we would not hesitate to reverse his conviction. The appellant, however, makes no such contention. His argument is that as a result of the state's failure to appoint counsel for him at his arraignment, combined with the time lapse necessary to carry on subsequent legal battles which result-ed in the reversal of his previous conviction attributed to that failure, the preservation and presentation of his insanity defense was severely prejudiced, and as a consequence, his retrial on the same charge should be barred. This is certainly a novel contention and one with which we cannot agree.

If appellant's position were to be accepted, it would logically follow that in all situations where an appeal results in a reversal of conviction and problems arise, whether as a result of the time lapse involved or otherwise, with preserving evidence for a possible retrial, then all retrials under such circumstances would be barred. Similarly, if a witness or several witnesses, as a result of an identical or even longer time lapse than that involved here in taking the appeal, forgot some details with regard to a pending matter or perhaps died in the interim between verdict and appeal, under appellant's theory, retrial also should be barred. Such a result, in our opinion, would be judicially unsound.

As we have stated, the argument is untenable and its acceptance could only deteriorate and render less effective the judicial process as we know it. We find no merit in the above contention.

█ Assignment 4, however, goes further and asserts that the trial court's refusal to allow withdrawal of the plea for the purpose of hearing the motion to dismiss the indictment, raising the same contentions above, was also error. As appellant points out, under Alabama law, once issue is joined, further dilatory pleading is lost as a matter of right but resorts to the sound discretion of the trial judge. Accordingly, appellant claims the trial court abused its discretion in granting the state's motion to strike appellant's motion to dismiss the indictment. We do not agree.

It is clear that appellant had the benefit of a motion to quash the indictment, timely made before arraignment, and based on the same grounds as the subsequent mo-

tion to dismiss the indictment which was heard by the court while appellant was being ably represented by Messrs. Hall and Billingsley. After careful consideration, the trial court overruled the motion to quash as well as certain demurrers which had also been interposed. Arraignment followed, and Messrs. Hall and Billingsley, after taking an exception said nothing further regarding the court's action overruling the motion but proceeded to request the court to grant appellant an independent psychiatric examination. The trial court did grant appellant's request for said examination. The proceedings continued with the court requesting the appellant to plead. Appellant by counsel pleaded not guilty and not guilty by reason of insanity. By agreement of the parties, trial date was set.

Appellant insists that under federal law the assertion of a federal question is itself a federal question, and, therefore, cannot be defeated by state procedural bars. Although this is a correct statement of the law, we know of no U. S. Supreme Court decision which makes it mandatory that a motion asserting a federal question be heard twice.

The appellant had the benefit of a motion to quash the indictment based on the same grounds as his subsequent motion to dismiss the indictment. No new grounds were shown to the trial court and, as with the first motion, no known or existing federal or state constitutional right was shown to have been violated. As a matter of law, the trial court's action was proper. Accordingly, we find no error in the trial court's action in sustaining the state's motion to strike appellant's motion to dismiss the indictment.

Appellant's assignment of error 5 states that service by Negroes on grand and petit juries is arbitrarily limited by state officials in Jefferson County. The evidence fails to substantiate appellant's claims. Similar issues here raised by appellant were previously raised in the case of Swain v. Alabama, 380 U.S. 202, 85 S. Ct. 824, 13 L.Ed.2d 759, and the case was affirmed. Nothing new that we can see or that is supported by competent evidence is presented here. Consequently, we find no merit in assignment of error 5.

It is our considered opinion that the evidence was amply sufficient to support the verdict and judgment. The trial court did not err in denying appellant's motions to quash the indictment and to exclude the state's evidence, nor was there error in the court's refusal to grant appellant the affirmative charge. Likewise, and for the reasons stated, the trial court did not err in denying appellant's motion for a new trial.

The decision of the lower court is due to be, and is, affirmed.

Affirmed.

LAWSON, MERRILL and HARWOOD, JJ., concur.