301 So.2d 204

**Jake Edward HAYNES, alias**

v.

**STATE.**

**4 Div. 284.**

Court of Criminal Appeals of Alabama.

April 23, 1974.

Rehearing Denied May 21, 1974.

J. Allen Cook, Andalusia, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

**HARRIS, Judge.**

Appellant was convicted under Count II of an indictment denounced by Section 157, Title 14, Code of Alabama 1940. Omitting the formal parts, the indictment reads as follows:

"The Grand Jury of said County charge that before the finding of this indictment, that Jake Edward Haynes, alias Jake Haynes, alias Edward Haynes, whose name is to the Grand Jury otherwise unknown, did aid or assist James Fred Kelley, a prisoner lodged in the Covington County, Alabama, jail under a conviction of a felony to escape therefrom, against the peace and dignity of the State of Alabama."

The statute under which he was tried and convicted is as follows:

"Any person who conveys into the county jail, or into the penitentiary, or into any convict prison, or into any other lawful place of confinement, any disguise, weapon, tool, instrument, or other thing useful to aid any prisoner to escape therefrom, with intent to facilitate the escape of any prisoner lawfully confined therein under a charge or conviction of felony, or who, by any other act, or in any other way, aids or assists such prisoner to escape, whether such escape

be attempted or effected or not, or who rescues, or attempts to rescue, any such prisoner therefrom, or from the lawful custody of any officer or person, shall, on conviction, be imprisoned in the penitentiary for not less than two nor more than ten years."

Following the verdict of the jury the court sentenced appellant to five (5) years imprisonment in the penitentiary.

On July 30, 1973, one James Fred Kelley, alias, was convicted in the Circuit Court of Covington County for the offense of assault with a deadly instrument upon a peace officer in the performance of his duties and was sentenced to imprisonment in the penitentiary for a term of seventeen (17) years. Title 14, Section 374(20) Code of Alabama 1940. He was confined in the Covington jail pending appeal of this judgment of conviction. His appeal was abated as he was killed while attempting to escape. Kelley's attempt to escape gave rise to the present prosecution.

John Harrell, a deputy sheriff of Covington County, testified that in August, 1973, he was serving as a deputy and was a witness to the actual escape of James Fred Kelley. He stated that Kelley used one Ray Aughtman as a hostage while inside the jail by keeping a knife around his throat for almost five hours before his demands to the officers were met. The demands were for the officers to bring an automobile to the jail filled with gasoline and to unlock the jailhouse door and to fade out of sight. The demands were complied with to a point. The car filled with gasoline was brought to the jail and the jail door was unlocked but the officers took up strategic positions around the jail. They saw Kelley emerge from the jail with a knife around Aughtman's throat and walk him to the waiting car. They approached the car on the driver's side and Kelley forced Aughtman to get in and slide over to the passenger side. He then got under the steering wheel at which time the officers opened fire and Kelley died on the spot.

The sheriff and his deputies initiated an investigation as to the cause of the jail break and interviewed all the jail inmates and others. Appellant was a trusty in the jail at the time and had the freedom of all floors in the jail.

Before appellant was interviewed, he was given the *Miranda* rights and warnings. He told the interrogating officer that he knew and understood his rights and agreed to give the officer a statement. The officer wrote his statement in longhand and read it to him. Appellant said it was true and correct and signed the pen and ink statement. The officer told him the statement would be typed and submitted to him. After the statement was typed, the officer read it to appellant and then gave it to him to read and to make any changes he wanted to make. After appellant read the typed statement, he told the officer that it was true and correct and voluntarily signed his name thereto. The statement is as follows:

"VOLUNTARY STATEMENT

"DATE 8–18–73 PLACE Sheriff's Office TIME STARTED 5:55 P.M.
"I, the undersigned, Jake Edward Haynes, am 19 years of age, having been born in 11–26–53, at Lockhart, Alabama in Covington County. I now live at 1905 W. 8th Avenue, Florala, Alabama. I have been duly warned and advised by John F. Ellis, Jr., a person who has identified himself as Deputy Sheriff, Covington County, that I do not have to make any statement at all, nor answer any questions or do anything that might tend to go against me or incriminate me in any manner, and that any statement I make may be used against me on the trial or trials for the offense or offenses concerning which the following statement is herein made. I was also warned and advised of my right to the advice and presence of a lawyer of my own choice before or at any time during any question-

ing or statement I make, and if I am not able to hire a lawyer I may request and have a lawyer appointed for me, by the proper authority, without cost or charge to me.

"I do not want to talk to a lawyer, and I hereby knowingly and purposely waive my right to the advice and presence of a lawyer before and during any questioning or at any time before or while I voluntarily make the following statement to the aforesaid person, knowing that anything I say can and will be used against me in a court or courts of law.

"I declare that the following voluntary statement is made to the aforesaid person of my own free will without promise of hope or reward, without fear or threat of physical harm, without coercion, favor or offer of favor, without leniency or offer of leniency, by any person or persons whomsoever.

"I, Jake Edward Haynes, was arrested by the Florala City Police Department, on or around the 23 of July, 1973.

"I stayed in the city jail from that time until the 26 of July, 1973 when I was transferred to the Covington County jail, where I was placed in the North side of the bull pen along with James Fred Kelly, Steve Hataway. There was both black and white prisoners. (sic)

"After about 10 days I was made a trustee, about 5 days before I was made a trustee, 'I don't remember the dates', I saw Calvin DeWayne Harris bring James Fred Kelly a pack of cigarettes, then he pulled six hack saw blades out of his boot and gave them to James Fred Kelly Kelly then took the blades and put them into his shirt and took them into his cell and them (sic) placed them under his bunk.

"On or around the 7 of August, 1973 sometimes in the afternoon I was upstairs and James Fred Kelly and Steve Hataway called me to the door of the Bull pen that they were in, at that time. James Fred Kelly asked me if he could have the pen knife I was using to clean my nails with, I told him no that it was Ray's, then Steve Hataway ask (sic) me if I knew where that big white handle knife was downstairs of the check in desk, (sic) I told him no. Then he told me it was in the cigar box. At that time James Fred Kelly ask (sic) me if I could get it for him, I said I didn't know, then he said if I could he would give me $5.-00. I went downstairs, got the knife, took it back to James Fred Kelly, then he gave me $5.00. Steve Hataway was present and saw me give the knife to James Fred Kelly.

"I have read this statement consisting of ____ pages, and I certify that the facts contained therein are true and correct. I further certify that I made no request for the advice or presence of a lawyer before or during any part of this statement, nor at any time before it was finished did I request that this statement be stopped. I also declare that I was not told or prompted what to say in this statement.

"This statement was completed at 6:35 P.M. on the 18th day of August, 1973.

"WITNESS: /s/ Lloyd 'Jeffers
WITNESS: /s/ John H. Harrell
        /s/ Jake Haynes
        Signature of person
        giving voluntary
        statement."

The sheriff of Covington County was present at the time the above statement was given to the interrogating officer. During the interview, the sheriff asked appellant if he knew that Kelley was planning to escape and appellant replied that he did know about the plan and had known for two or three weeks that Kelley had planned to escape.

Appellant urges a reversal in this case for the failure of the state to prove that at

the time he carried the knife and delivered it to Kelley that he knew that Kelley was going to use the knife in effectuating his escape from jail. He asserts that when a criminal intent is dependent on knowledge of particular facts, ignorance or mistake as to these facts, honest and real, not superinduced by the fault or negligence of the party doing the wrongful act absolves from criminal liability.

 Appellant offered no evidence in his behalf. On the question of intent the rule is stated to be "that where the state makes out a prima facie case presenting uncontroverted evidence that a possible crime has been committed by the accused, a trial judge may allow the case to go to the jury to consider all the circumstances and evidence submitted to them." And, "in appropriate cases, whether or not the crime be consummated, the question of intent is always a jury question." Hamilton v. State, 283 Ala. 540, 219 So.2d 369, certiorari denied 396 U.S. 868, 90 S.Ct. 134, 24 L.Ed.2d 121; McCall v. State, 262 Ala. 414, 79 So.2d 51.

Another well-recognized rule is that the corpus delicti may be proved by circumstantial evidence; and, "if there is a reasonable inference deducible from the evidence of its existence, the court must submit the question of the sufficiency and weight of the evidence tending to support that inference to the jury." McCall v. State, supra.

It is undisputed that appellant carried the knife to Kelley, a prisoner lodged in the Covington County jail and it is undisputed that he knew of Kelley's escape plan and had known it two or three weeks in advance of the escape. The only logical conclusion that can be drawn from the facts and circumstances of this case is that appellant is bound to have known that Kelley was going to make use of this knife in some way to effectuate a jail break. At least it was a question to be resolved by the jury and it was so resolved.

We find no error in the record and the case is due to be affirmed.

Affirmed.

All the Judges concur.