Burglary in the first degree; sentence: thirty years' imprisonment.
Appellant was indicted for nighttime burglary "with intent to ravish." Code of Ala. 1975, § 13-2-40. The jury returned a guilty verdict, and appellant contends that the State presented insufficient evidence to sustain this conviction. We agree.
Between 3:30 and 4:00 a.m. on December 30, 1979, fourteen-year-old Rosalyn Davis awoke and saw a large man standing over her bed. When she started to sit up and scream, the man placed his hand over her mouth. She turned away from her assailant toward a window next to her bed and in doing so freed herself from the man's hand covering her mouth. She screamed and suddenly felt a pain in her side.
The victim's father, John Davis, was awakened by his daughter's scream. As he opened the door to his bedroom to investigate, he saw the appellant "tiptoing" out of Rosalyn's bedroom. A chase ensued whereby appellant fled from the apartment followed by Davis, Rosalyn and a young girl who had been sleeping on another bed in the same room with Rosalyn. From their porch they watched appellant run down the street and out of sight. The three of them went back into the apartment and Rosalyn then discovered that she had been stabbed in the lower back. Davis immediately called the police and afterwards drove his daughter to a nearby hospital.
The police found scratches around the front door indicating a forcible entry. In the Davis kitchen they discerned a girl's purse had been ransacked, its contents strewn on top of the stove. The Davises told the police that a butcher knife was missing from the kitchen. However, none of the witnesses testified that they saw appellant with a knife, nor did police discover a knife on appellant's person upon arrest, nor did a search by the police of the area between the apartment and the point of appellant's apprehension reveal the missing knife.
Rosalyn Davis testified before the jury as follows:
"Q. What happened when you woke up?
 "A. When I first woke up I was sorta still asleep and then something told me to really wake up and then I saw a man standing over my bed.
"Q. How far from your bed was he standing?
"A. About one foot. It wasn't that much.
 "Q. What happened after you awoke and saw this man standing over your bed?
"A. I guess he realized that I was awake . . . *Page 967 
"MR. PARKER: We object to that.
"THE COURT: Just what you saw and did please, mam.
 "A. I woke up and then I realized that he was there and I started to scream and I tried to scream and he put his hand over my mouth.
 "Q. After he put his hand over your mouth what did he do then?
 "A. Like pushed me back down on my bed and then I started to struggle with him.
"Q. What did you do as you were struggling?
 "A. I was trying to struggle and then I made a quick turn left towards the window from him and then I got, I felt a pain in my side.
. . . .
 "Q. As I understand you had gone to sleep and you woke up and there was a man there in your room?
"A. Yes.
"Q. Did you see a knife in the person's hands?
"A. No.
"Q. Did the person say anything to you?
"A. No.
"Q. Did you say anything to him?
"A. No.
 "Q. So the first thing that you did when you saw this person standing in the room was scream, is that right?
"A. Yes.
 "Q. When you looked at that person there in the room what did you see?
"A. What do you mean?
 "Q. Tell me what you saw. You were lying there and you saw a person standing there?
"A. Yes.
"Q. What did you see?
 "A. I saw a man with a hat on and a coat and he had a beard.
"Q. A hat, a coat and a beard?
"A. Yes.
"Q. Is that when you screamed?
 "A. No. I didn't scream at first because he didn't let me. He put his hand over my mouth.
 "Q. In other words when you woke up you moved, is that correct?
"A. Yes.
 "Q. When you moved this person put his hand over your mouth?
"A. Yes.
 "Q. Was your mouth or face bruised or injured in any manner.
"A. No.
 "Q. And then I think you say that you turned your face away from him and pulled your head up or something like that?
"A. I turned away and then I screamed.
 "Q. So when you turned away his hand came off your mouth, is that what you're saying?
"A. Yes.
 "Q. And when you screamed that's when the person left the room?
 "A. No. When I screamed after he had stuck me in the side and then after he left the room.
"Q. Then he left the room?
"A. Yes."
This was the only testimony presented by the State of what transpired in Rosalyn Davis's bedroom. Since appellant was compelled to flee from the apartment as soon as he exited Rosalyn's bedroom and saw her father, he obviously rummaged through the purse in the kitchen prior to his entry into her bedroom. Appellant insists that none of the evidence reveals an intention to ravish when he burgled the Davis apartment.
The elements of the crime of first degree burglary are as follows: (1) breaking and entering, (2) in the nighttime, (3) of an inhabited dwelling house or any other house or building occupied by any person lodged therein, with the intent to steal or commit a felony. Lowman v. State, 400 So.2d 430 (Ala.Cr.App.),writ denied, 400 So.2d 434 (Ala. 1981). The intent to ravish must be concurrent with the breaking and entering. Watkins v. State,389 So.2d 186 (Ala.Cr.App. 1980); Young v. State, 51 Ala. App. 400, 286 So.2d 76 (1973); Davis v. State, 44 Ala. App. 284,207 So.2d 649 (1967). The question of intent is a question for the *Page 968 
jury. Sullivan v. State, 340 So.2d 878 (Ala.Cr.App.), cert.denied, 340 So.2d 881 (Ala. 1976).
Intent, "being a state or condition of the mind, is rarely, if ever, susceptible of direct or positive proof, and must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence." Pumphrey v. State,156 Ala. 103, 47 So. 156 (1908); Hamilton v. State, 283 Ala. 540,219 So.2d 369, cert. denied, 396 U.S. 868, 90 S.Ct. 134,24 L.Ed.2d 121 (1969). "[I]n weighing evidence toward intent to ravish, the jury must have before it more than a mere balancing of probabilities. The State must convince the jury from the evidence beyond a reasonable doubt." Davis v. State, 42 Ala. App. 374,378, 165 So.2d 918, cert. denied, 276 Ala. 703,165 So.2d 927 (1964).
The State failed to prove that the appellant broke into and entered the Davis apartment with the intent to ravish a woman therein. Instead, the fact that appellant previously entered the kitchen and went through the contents of a purse demonstrated that appellant more than likely burglarized the apartment with the intent to steal. Moreover, since the State's testimony showed that Rosalyn was stabbed during the incident, there was enough evidence for the jury to determine whether there was an intent to murder if that specific felony had been made the basis of the indictment. We cannot understand why the State did not indict the appellant for burglary with intent to steal or intent to murder, rather than intent to ravish, of which it had no evidence.
While we are aware that the intended act need not be carried out, Yelton v. State, 56 Ala. App. 272, 321 So.2d 234, cert.denied, 294 Ala. 745, 321 So.2d 237 (1975), the State presented no evidence that appellant got into bed with the victim, kissed her, removed her clothes, took off his clothes, touched her breasts or private parts, or even spoke to her. Lowman, supra;Sashner v. State, 48 Ala. App. 246, 263 So.2d 701 (1972);Hamilton, supra; Davis, supra; Underwood v. State, 248 Ala. 308,27 So.2d 492 (1946). Because the State's evidence failed to disclose that appellant had the requisite intent to ravish, the proof is insufficient to support the present conviction. The scintilla rule does not apply in a criminal case, Watkins, supra;McArdle v. State, 372 So.2d 897 (Ala.Cr.App.), writ denied, Exparte State ex rel. Attorney General, 372 So.2d 902 (Ala. 1979), nor may a guilty verdict rest on speculation. See also Baker v.State, 404 So.2d 100 (Ala.Cr.App.), cert. quashed, 404 So.2d 105
(Ala. 1981).
REVERSED AND RENDERED.
All the Judges concur.