Appellant was indicted for burglary in the first degree on June 6, 1980. At arraignment, appellant entered a plea of not guilty. The trial judge denied appellant's pretrial pro se motion for speedy trial, as well as his motion to dismiss the indictment for lack of sufficient notice of the particular crime charged. Appellant was tried before a jury and found guilty. After hearing evidence on prior felonies, the trial court sentenced the appellant to life without parole. This appeal followed. *Page 998 
Ms. Loyce Sutton, the resident of the burglarized dwelling, testified she lived at 5624 7th Avenue South, Crestwood, in Birmingham, Jefferson County, Alabama. Ms. Sutton received a telephone call at work at 9:30 a.m., on March 5, 1980, from a neighbor, Ms. Clotfeltor, which prompted her to leave for home immediately. She recalled that she had locked both her front and back doors before leaving for work at 7:30 a.m. When she arrived home, she observed Ms. Clotfeltor and her daughter in their parked automobile in front of her residence. The companion who had driven Ms. Sutton home parked her vehicle in front of a next door neighbor's house. Another neighbor, Ms. Young, who had been knocking on Ms. Sutton's front door, was standing in the driveway. Another automobile was parked across the street from Ms. Sutton's residence.
As Ms. Sutton got out of the vehicle and walked towards her house, someone shouted at her, causing her to get back into the automobile. Her driving companion then told her the man was approaching with a gun in his hand, and Ms. Sutton looked and saw a man in a light tan coat crossing her front yard toward the street and the vehicle parked across from her house. She immediately got down on the floorboard, after which she heard a gun fire. She sat up and saw the man drop either a gun or a holster, stop and pick it up, and then get in his vehicle and drive away. The police arrived shortly thereafter and she entered her back door with them. The door had been broken open, the deadlock bent, and the inside door facing torn loose. $2600 in silver and jewelry was missing, the bedroom had been ransacked, and a .31 caliber pistol was gone.
Anne Clotfeltor, Ms. Sutton's neighbor, stated she and her mother passed Ms. Sutton's residence around 9:00 a.m. on March 5, 1980, as they drove home from the grocery store. They observed a green Monte Carlo parked in front of the house and two black males on the doorsteps. About 9:30 they left their house, and as they drove by Ms. Sutton's, they noticed the Monte Carlo had been moved to the opposite side of the street. The two women drove down the alley behind Ms. Sutton's house and saw that the back door was open. They then returned home, where her mother made a phone call. They left home again and parked on the street near Ms. Sutton's house. They talked with Ms. Young about the strange automobile, and then Ms. Clotfeltor walked around behind a neighboring house where she observed two black males about to exit from Ms. Sutton's back door. She called her dog, and the two men went back inside the house. Ms. Clotfeltor then returned to the front and told her mother and Ms. Young that somebody was in the house. She then went back behind the house again and saw the two black males coming out the door again. One of the men was carrying a pink pillow case that appeared to be filled with items. The men proceeded through the back yard towards the alley. When the men saw Ms. Clotfeltor, one of them waved a gun at her. They then jumped the fence into the alley. She returned to the front and told the other ladies the man had a gun. After about five minutes, one of the men, dressed in a knee length tan coat, came around to the front walking towards the green Monte Carlo. He fired a shot towards the ladies, and then got into the automobile and drove away headed toward the alley. As he drove away Ms. Clotfeltor observed the tag number, which she verified with another neighbor who had written down the number. The police arrived shortly after the men departed.
Elise Clotfeltor, Anne Clotfeltor's mother, substantiated her daughter's testimony. She stated the getaway car was a black two door Chevrolet with narrow stripes. She was the person who called Ms. Sutton at work, as well as the police. She also recalled that the man wore a long tan coat.
Mary Young, another neighbor, observed a vehicle with stripes and the word "Chevy" printed on it parked across the street from Ms. Sutton's house on March 5, 1980. After trying to call some neighbors, she then took a pen and a directory and walked up the street and wrote down the automobile tag number. Ms. Young identified the directory *Page 999 
at trial as the one on which she had transcribed the tag number E-R-H-8-5-1, as well as the word CHEV, indicating the vehicle was a Chevrolet. After taking down the tag number, she knocked on Ms. Sutton's front door, but heard nothing in response. At that time, Ms. Clotfeltor and Ms. Sutton arrived in separate vehicles. Ms. Young heard a shot shortly thereafter, and ran to her house. As she entered her house, she looked back and saw a black man entering the automobile parked across from Ms. Sutton's. She then called the police.
G.C. Rhodes, a Birmingham police officer, answered a police dispatch to 5624 7th Avenue South on March 5, 1980, at approximately 9:40 a.m. He received a tag number from Mary Young, which she had written on a piece of paper. He called the number in and found the tag was registered to the appellant, Larry Hardy, at 2911 6th Avenue South, for a 1970 Chevrolet Monte Carlo.
Officer Stan McConnell of the Birmingham City Police, testified he went to the area of the appellant's residence on March 5, 1980, in response to information he received on a burglary. Around 11:00 a.m. he observed a 1970 black Monte Carlo with pinstripes, followed by a Dodge Challenger, turn into the residence he had been watching, and drive around behind the house. He observed the appellant about to open the front door to enter the house. Officer McConnell shouted for the appellant to stop, and then appellant ran into the house. Officer McConnell then took the occupant of the Dodge, identified as Nelson McKee, into custody. Some fifteen minutes later, he observed the appellant again in front of the residence, in the back of a police vehicle. The appellant was wearing a long, light brown coat.
Douglas Riley, a Birmingham police officer, testified he received a lookout order for Larry Hardy on March 5, 1980. He observed the appellant in the alley behind his residence around 11:00 a.m. and gave chase as appellant fled. He apprehended the appellant after chasing him over several city blocks. The appellant was wearing a camel-colored coat. When apprehended the appellant identified himself by some name other than Larry Hardy. Officer Riley took the appellant into custody, advised him of his rights, and told him he was being arrested as a suspect in a burglary.
J.W. McKay, a Birmingham police officer, stated he talked with the appellant at the Birmingham City Jail on March 6, 1980. After informing the appellant of his Miranda rights, and having appellant read and sign a waiver of rights form, he took an oral statement from the appellant. He then had appellant write the statement in his own handwriting. Officer McKay's account of the statement appears in the record as follows:
 "He told me that he and another Defendant, Nelson McKee went to 5624 7th Avenue South and knocked on the front door of the residence; there was no answer. He went to the rear door and broke into the rear entrance of the house and went inside and took various items out of the household and merchandise, guns, candle-holders, and put them in a pink pillowcase and as they were in the process of doing that, someone knocked on the door and frightened them off, and they exited out the rear door, and when they left out the rear door, he said he saw someone standing in the rear and in the front yard and fired a firecracker to scare the people off and they left." (R. p. 143)
Officer McKay testified he in no way threatened the appellant, nor did he offer him any hope of reward or help for making the statement.
The State rested at the close of Officer McKay's testimony. The appellant's motions to exclude Officer McKay's testimony and for a directed verdict were overruled. The appellant then rested without presenting any testimony.
Appellant contends his motion to exclude his statement to Officer McKay was erroneously denied by the trial court in that the statement was improperly obtained. Appellant argues the length of time between arrest and the interrogation, coupled with the fact that appellant did not have counsel *Page 1000 
present at the interrogation, rendered the statement inadmissible. As well, he asserts the appellant was pressured and persuaded into making a statement by threat and promise of collateral benefits by Officers Hill and McKay. Testimony given by appellant on voir dire in support of his motion indicated that Sergeant Hill and Officer McKay told appellant he would be charged with additional burglaries if he did not show the police what he had done with the stolen items. He testified he was placed in a police vehicle and driven about town to point out various places he had burglarized. He further testified that, although Officer McKay did read him his rights, and allowed him to read them himself, he had told Officer McKay he did not understand the lower portion of the waiver of rights form. He stated Officer McKay would not explain the form, but rather just told him to sign it. Appellant stated that he was frightened when he signed the form, and felt he was being threatened.
The only statement introduced at trial was one made by appellant to Officer McKay. However, Sergeant Hill testified on voir dire and stated that he had talked with appellant on March 5, 1980. He stated that to his knowledge, no one threatened, coerced, or made any promise to appellant. He testified he read appellant his Miranda rights from a card, and that appellant told him he understood his rights. Sergeant Hill never told appellant that if he did not cooperate that other cases would be brought against him. Neither was appellant forced to go and identify other burglary locations to Sergeant Hill's knowledge, although he did think appellant had shown some other officers some of the places he had burglarized.
Officer J.W. McKay testified on voir dire that he questioned appellant on March 6, 1980, in a Birmingham city jail interrogation room. No one other than McKay and appellant were present. Officer McKay stated that, prior to the conversation, no one to his knowledge told appellant it would be better or worse for him if he testified, nor was any promise or reward offered. Appellant was neither abused nor coerced into making a statement. Officer McKay identified a Miranda warning and waiver of rights form which he both read to appellant and allowed appellant to read aloud. Appellant then signed, dated, and noted the time of day on the waiver. Appellant then proceeded to orally tell the events of the burglary to Officer McKay. McKay then requested that appellant make the same statement in his own handwriting, which appellant voluntarily did.
A confession is presumed to be involuntary and hence, before its admission, there must be evidence presented to the trial judge sufficient to rebut the presumption. Such evidence must show the confession was made freely and voluntarily, without the influence of hope or fear, unless attending circumstances affirmatively disclose the voluntariness of the confession.Eakes v. State, Ala.Cr.App., 387 So.2d 855 (1978). The trial judge must examine all attendant circumstances in making the determination of voluntariness, allowing each case to stand or fall on its own individual merit. The ultimate inquiry, therefore, is whether the appellant's rational intellect and free will were overcome at the time he confessed, thus rendering the confession involuntary. Eakes, supra. The determination of the voluntariness of the confession is within the sound discretion of the trial court. Crawford v. State, Ala.Cr.App., 377 So.2d 145, Ala., 377 So.2d 159 (1979).
We have reviewed all the testimony concerning the issue of voluntariness, and are convinced the trial judge did not abuse his discretion in finding that the statement was voluntarily made. The evidence does not reasonably prove that appellant was threatened or coerced into making the statement, or promised some benefit in exchange therefor. Neither is there any reasonable inference of adverse effect caused by either the timing or nature of the interrogations by Officer Hill and Officer McKay. Austin v. State, 56 Ala. App. 307, 321 So.2d 272
(1975). The confession met all the requirements of voluntariness. Appellant was properly advised of his rights, *Page 1001 
including right to counsel, and knowingly and intelligently waived the same. The confession was properly admissible.
Appellant contends the indictment was insufficient as drawn to apprise him of the charge against which he was to defend. His pretrial motion to dismiss the indictment on that ground was denied. The indictment appears in the record as follows:
 "The grand jury of said county charge that, before the finding of this indictment, LARRY LEE HARDY, whose name is to the grand jury otherwise unknown, did, knowingly and unlawfully enter or remain unlawfully in a dwelling of LOYCE M. SUTTON with intent to commit a crime therein, to-wit: theft, and while effecting entry or while in the dwelling or in immediate flight therefrom, said defendant or another participant, to-wit: NELSON McKEE, was armed with an explosive or deadly weapon, to-wit: a pistol, in violation of § 13A-7-5 of the Alabama Criminal Code, against the peace and dignity of the State of Alabama."
A demurrer is the normal procedure to raise defects going to the validity of an indictment. Due process mandates that a defect pertaining to an essential element of the offense, which renders the accused unaware of the nature and cause of the charge against him, cannot be waived by failure to demur. An indictment must contain the elements of the offense charged, and also sufficiently apprise the appellant of what he must be prepared to meet. Andrews v. State, Ala.Cr.App., 344 So.2d 533, cert. denied, Ala., 344 So.2d 538 (1977). The indictment in the instant case was proper in form and substance, being sufficient in and of itself to acquaint appellant with the crime charged, as well as with what he must be prepared to defend against.Green v. State, 34 Ala. App. 66, 36 So.2d 601 (1948); Hamiltonv. State, 283 Ala. 540, 219 So.2d 369 (1969).
Appellant contends the trial court erred in denying his pretrial motion for dismissal based upon lack of a speedy trial, caused in whole by unnecessary delay by the prosecution.
The crime for which appellant was tried occurred on March 5, 1980. Appellant was arrested on March 5, 1980, and indicted on June 6, 1980. He was arraigned and pleaded guilty on June 20, 1980. The pretrial hearing conducted by the trial court on appellant's motion indicated appellant was tried on September 30, 1980, for a burglary that occurred on February 19, 1980. He was next set for trial and pleaded guilty on December 16, 1980 for another burglary that occurred on February 15, 1980.
The appellant's record before the court indicated counsel was appointed for appellant on June 20, 1980. After pleading not guilty on June 20, appellant's case was passed from July to September to October to December and finally to March 20, 1981.
No demand for speedy trial was ever made by appellant. The issue was raised by appellant's pro se pretrial motion to dismiss for lack of a speedy trial.
Considering appellant's contention in light of the four factors outlined in Barker v. Wingo, 407 U.S. 514,92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), we find no denial of appellant's right to a speedy trial. Barker requires us to review: (1) the length of delay, (2) the reason for delay, (3) appellant's assertion of the right, and (4) prejudice to the appellant. The time between arrest and trial was approximately one year. The delay was caused by trial dates set for other crimes which occurred prior to the instant crime. Appellant made no assertion of his right until the end of February, 1981, before the trial in March of 1981. Because appellant was found guilty or pleaded guilty to other prior crimes which necessitated the delay of this trial, his freedom was not unnecessarily impaired by the delay. We have reviewed and considered all four factors and find no unconstitutional impairment of appellant's rights to speedy trial. Brown v. State, Ala.Cr.App., 392 So.2d 1248
(1980), cert. denied, Ala., 392 So.2d 1266 (1981). No error harmful to the substantial rights of appellant having been found, this case is affirmed.
AFFIRMED.
All the Judges concur. *Page 1002