Willard Billy Jones, Jr., was indicted in a two-count indictment. Count I charged the appellant with impersonating a police officer, in violation of § 13A-10-11, Code of Alabama 1975. Count II of the indictment charged the appellant with burglary in the first degree, in violation of § 13A-7-5, Code of Alabama 1975. Count I of the indictment was dismissed prior to trial. The jury found the appellant "guilty as charged" in count II of the indictment for burglary in the first degree. The appellant was sentenced to life without parole in the state penitentiary under the Habitual Felony Offender Act.
On March 13, 1987, Kelly Burrow lived at 309 Merrimac Heights apartments in Selma, Alabama. Lajuana Akers and Linda Cochran spent the night with Burrow on *Page 334 
the evening in question. During the late evening hours of March 13, 1987, or early morning hours of March 14, 1987, the women heard someone either turning or pushing the doorknob. Burrow inquired as to who was at the door. There was no response. A few moments later, the appellant knocked on the door. Burrow again asked who it was. Appellant replied, "I am a police officer, I need to talk to you." Cochran looked out of the window for a police car, but she did not see the appellant nor did she see a police car. The women then heard what they believed was a police radio, which was later determined to be a "pager." After hearing this, the women believed that the appellant was a police officer, and Cochran opened the door.
The appellant then walked in the door. He took approximately three steps inside the premises. When he entered, the women knew he was not a police officer. Akers asked the appellant where was his badge. The appellant, Jones, then motioned toward his pocket. The women saw a knife in the same pocket toward which Jones made his motion. Cochran and Akers, fearful that something was about to happen, stepped outside of the apartment when they saw the knife. The appellant also stepped outside.
Cochran asked appellant why he had a knife if he was a police officer. The appellant then hit Cochran across the neck with his hand. Cochran ran into the apartment and Burrow slammed the door. Burrow called the police and reported the incident. When Cochran was hit, Akers ran to another apartment where she called Burrow.
Burrow identified the appellant as the person who entered her apartment on March 13, 1987. There was also testimony that the appellant was wearing gray loafers, and a trench coat and had a "pager."
Joe Harrell, an investigator for the Selma Police Department, testified that on April 9, 1987, he went to the Miller Funeral Home, the appellant's place of employment, where he found a pager on this appellant. This pager was taken from the appellant and placed in the evidence locker of the Selma Police Department.
Roy Abbot, a detective with the Selma Police Department, went to the appellant's home on April 13, 1987. The appellant's wife signed a permission-to-search form. The search produced a pair of gray loafers and a black trench coat.
 I
The appellant challenges the sufficiency of the evidence. "A person commits the crime of burglary in the first degree if he knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein, and, if, in effecting entry or while in dwelling or in immediate flight therefrom, he or another participant in the crime: [i]s armed with explosives or a deadly weapon." Ala. Code, § 13A-7-5(a)(1) (1975).
The indictment in this case charged that the appellant,
 "did, knowingly and unlawfully enter or remain unlawfully in a dwelling of Kelly Burrow, with intent to commit a crime therein, to-wit: Assault, and while effecting entry or while in the dwelling or in immediate flight therefrom, said defendant, . . . was armed with an explosive or deadly weapon, to-wit: a knife, in violation of Section 13A-7-5 of the Code of Alabama."
The appellant alleges that the State failed to prove that he had the requisite intent to commit an assault. The appellant gained entry into Burrow's residence by claiming that he was a police officer. Once the appellant was inside the apartment, the women asked to see the appellant's badge. The appellant reached for his pocket and the women saw a knife in his pocket. The women believed the appellant was going for the knife, and they ran outside the apartment. The appellant followed. Once outside the apartment, one of the women asked the appellant why he had a knife and he hit one of the women. The women then ran into various apartments.
 "Intent, 'being a state or condition of the mind, is rarely, if ever, susceptible of direct or positive proof, and must usually be inferred from the facts testified to by *Page 335 
witnesses and the circumstances as developed by the evidence.' Pumphrey v. State, 156 Ala. 103, 47 So. 156 (1908); Hamilton v. State, 283 Ala. 540, 219 So.2d 369, cert. denied, 396 U.S. 868, 90 S.Ct. 134, 24 L.Ed.2d 121 (1969)."
Cook v. State, 409 So.2d 965, 968 (Ala.Cr.App. 1981), cert.denied, (Ala. 1982). See also Brown v. State, 48 Ala. App. 456,265 So.2d 898 (1972).
Certainly, the appellant's intent to commit an assault could be inferred from his conduct and the surrounding circumstances. The appellant gained entry into the residence by false pretenses, and once inside, he reached toward his pocket, which contained a knife. It was not necessary that the intended act be committed. Smith v. State, 492 So.2d 638 (Ala.Cr.App. 1986). Moreover, the appellant's act of hitting Cochran outside of the apartment could be considered evidence of his intent. Therefore, the question of the appellant's intent to commit an assault was properly submitted to the jury.
The appellant also contends that the State failed to prove that the knife in this case was a deadly weapon. Section13A-1-2(11) defines a deadly weapon as:
 "[a] firearm or anything manifestly designed, made or adopted for the purposes of inflicting death or serious physical injury, and such term includes, but is not limited to, a pistol, rifle or shotgun; or a switch-blade knife, gravity knife, stiletto, sword or dagger; or any billy, black-jack, bludgeon or metal knuckles."
As this court stated in Thatch v. State, 432 So.2d 8, 9
(Ala.Cr.App.), cert. denied, (Ala. 1983);
 "[c]ertain types of knives are specifically included within the definition of 'deadly weapon,' but that definition is not limited to knives of only those types. § 13A-1-2(11); see Johnson v. State, 406 So.2d 451 (Ala.Cr.App. 1981)."
Although we cannot determine exactly what type of knife the appellant had on the day in question, we know it was large enough to be seen protruding from the appellant's pocket. Whether the knife in the case at bar was a "deadly weapon" was a question for the jury to determine. We find that there was sufficient evidence from which the jury could conclude that the appellant was guilty of the offense charged.
 II
The appellant was sentenced to life imprisonment without parole under the Habitual Felony Offender Act. The appellant contends that one of his four previous convictions was improperly considered for enhancement purposes because the State failed to prove that his conviction for abduction in Ohio would have constituted a felony in Alabama. "[A]ny error in proving prior convictions in excess of the number needed to invoke the Habitual Offender Act is error without injury, where the evidence of the unneeded prior convictions did not prejudice the defendant." Peoples v. State, 457 So.2d 1000
(Ala.Cr.App. 1984), quoting Smith v. State, 401 So.2d 251,256-57 (Ala.Cr.App.), cert. denied, 401 So.2d 257 (Ala. 1981).
Only proof of three prior felony convictions was necessary to sentence the appellant to life imprisonment without parole under § 13A-5-9(c)(3), Code of Alabama 1975. The State properly proved the appellant's prior convictions for rape and robbery in Georgia and for another robbery in Ohio. See Jones v. State,469 So.2d 713 (Ala.Cr.App.), cert. denied, (Ala. 1985); McBridev. State, 480 So.2d 619 (Ala.Cr.App. 1985). Thus, any error in the introduction of the Ohio abduction conviction was harmless error. Phillips v. State, 462 So.2d 981 (Ala.Cr.App. 1984),cert. denied (Ala. 1985).
 III
The appellant contends that he was not accorded a proper allocution at the sentencing hearing. Rule 8(b)(1), A.R.Crim.P. (Temp.) states that: "In pronouncing sentence the court shall: Afford the defendant an opportunity to make a statement in his own behalf before imposing sentence." "In Alabama, the courts have clearly held that, in a felony conviction, the court must *Page 336 
ask the defendant if he has anything to say as to why the sentence of the law should not be imposed on him." Ebens v.State, 518 So.2d 1264, 1269 (Ala.Crim.App. 1986). This inquiry is mandatory. McCray v. State, 46 Ala. App. 588,246 So.2d 475 (1971). See also Thomas v. State, 280 Ala. 109,190 So.2d 542 (1966).
The following occurred during the sentencing hearing in this case:
 "THE COURT: Okay. Anything else from either of you?
 "MR. PETTAWAY: That's all we have on that point, Your Honor.
"THE COURT: Anything further from the State?
"MR. SULLIVAN: No, sir.
 "THE COURT: I'm going to take about ten minutes. Hopefully I can get it done in that time. I want to take what you have said and what I have here and consider it; and I'll be back —
 "MR. SULLIVAN: Your Honor, we would also like to offer to the Court these copies of these cases that we have. I have already presented to Collins.
 "THE COURT: All right. Anything further from anybody now before I take this recess?
 "MR. PETTAWAY: Your Honor, the defendant wants to say something.
 "THE DEFENDANT: Your Honor, on the attempted abduction, in Judge Walker's courtroom, two years ago, it was a fugitive warrant from Ohio; and Ohio notified the judge that they didn't want to pursue the matter. He dismissed it. I found out later it is brought back up. I notified Judge Walker again. He said it was dismissed, that Ohio was not going to pursue the matter. I have talked with Mr. Sullivan, or tried to talk with him several times regarding this robbery third and all the other charges. He refused to come forth with any witnesses for any trial. So he's standing here today for robbery third. I'm asking him, where is the other charges? I don't feel he has a witness. He doesn't have a case. That's what I feel. That case is three years old, Your Honor. I have been waiting for years. Frankly, I don't feel he has anything.
"THE COURT: Is he referring to another case?
"MR. SULLIVAN: He just pled to it, Your Honor.
 "MR. PETTAWAY: I think he more or less talked about the habitual cases, then he went off on another case.
 "THE DEFENDANT: The whole incident is four years old. That is why he is railroading everybody in the jail over there. He has to dismiss it because they don't have anything. And I'll tell you right now, you don't have anything. If you do, bring it forth.
 "THE COURT: I think we're getting to the point of rhetoric. We'll be in recess for ten minutes." (R. 205-07.)
After a short recess, the trial judge returned and pronounced sentence upon this appellant.
Although the appellant was not specifically asked by the trial judge whether he had anything to say before sentence was imposed on him, the trial judge asked if anybody had anything to say before he took a recess and then he allowed the appellant to make a lengthy statement. There are no magic words that a trial judge must recite before a defendant is afforded a proper allocution. All that is required is that the defendant be given an opportunity to make a statement. Clearly, the transcript of the sentencing hearing shows that the appellant in this case was afforded an opportunity to make a statement before sentence was imposed. The "Judgment and Sentencing Habitual Offender" order also reflects this fact. (R. 244.) Thus, we find that the appellant was afforded a proper allocution. Furthermore, we must also note that there was no objection on these grounds at the sentencing hearing.
For the reasons shown above, the judgment of the trial court is due to be affirmed.
AFFIRMED.
All the Judges concur. *Page 337